THE RIVERSIDE IRON WORKS v. STEPHEN C. HALL.

*Payment—Acceptance of draft or note—Evidence.*

1. The president of an iron mining company purchased for the use of the corporation a quantity of iron, and gave his *individual* acceptance for the purchase price, which was credited to him on the corporation books, and accepted in *settlement* of the account rendered for the iron.   The draft was not paid at maturity, and was surrendered to the president in lieu of a draft drawn on the *corporation*, and by it accepted, the same being charged in account to the president, who was not asked to accompany it with his individual liability in any way, nor was it promised to the creditor in any form.

    *Held*, in a suit brought against the president for the value of the iron purchased, that, if the creditor expected the original liability of the defendant to continue for the life of the second draft, the ordinary way of securing it would clearly have required such draft to be so drawn that he would have indorsed it; and that this circumstance, taken in connection with the fact that the first draft was regarded by the creditor as a settlement of the account rendered, and was *unconditionally* surrendered, is sufficient *prima facie* to show that the *second* draft was received by the creditor as payment.

2. A draft or note should be regarded as payment whenever it appears that such was the *intention* of the parties, which may be shown by their *acts* and *conduct*, as well as by proof of an *express* promise or agreement ; and the surrender of the evidence of the debt or liability strongly indicates such payment.

3. A vendor claimed to have accepted the draft of a corporation in lieu of the personal acceptance of its president on his representation that the corporation was *solvent*, and would pay the draft at maturity, and on failure to make such payment suit was brought against the president in his *individual* character for the value of the property purchased.   The testimony failed to disclose the insolvency of such corporation, or that the defendant had not good reason for making such representations; and it appeared that the agent who took the *second* draft came to the conclusion that what the defendant said was true, after diligent and careful observation of the standing of the corporation and the situation of its property.   It further appeared that the *second* draft was never presented for payment.

    *Held*, that the plaintiff could not recover, and the jury should have been so instructed.

Error to Muskegon. (Russell, J.) Argued November 3, 1886. Decided January 13, 1887.

Assumpsit. Defendant brings error. Reversed. The facts are stated in the opinion.

*Smith, Nims, Hoyt & Erwin*, for appellant:

A statement false in fact, but not so to the knowledge of the party making it, and not made with intent to deceive, will not in general invalidate a contract: 2 Chitty, Cont. (11th ed.) 1044.

[For remaining points and authorities, see opinion, p. 169. —REPORTER.]

*Keating & Dickerman*, for plaintiff:

Taking a draft of a third person in payment of an antecedent debt will not extinguish the debt unless so agreed by the parties, and the burden of proving such agreement rests upon the party claiming under it, the law presuming it to be a conditional payment only: *Whitbeck v. Van Ness*, 11 Johns. 409; *Wadlington v. Covert*, 51 Miss. 631; *Haines v. Pearce*, 41 Md. 221; *Nightingale v. Chafee*, 23 Am. Rep. 531; *Smith's Appeal*, 52 Mich. 415. See, also, *Geib v. Reynolds*, 28 N. W. Rep. 923; *Gardner v. Gorham*, 1 Doug. 507.

In California the acceptance of an ordinary note of a third party is considered as accompanied with the condition that it shall be paid at maturity: *Griffith v. Grogan*, 12 Cal. 322, 324.

SHERWOOD, J. The plaintiff in this case is a corporation, located at Wheeling, West Virginia.

In 1883 a corporation, located at Crystal Falls, in this State, known as the Great Western Iron Company, was engaged in mining iron ore in the vicinity of that place. The defendant was president of the company, and the plaintiff had an agent at the same time located at Chicago, whose name was Frederick K. Bowes. The plaintiff's business was the manufacture of iron and nails.

In 1883 the defendant bargained with the agent of the

plaintiff at Chicago to ship to the Great Western Iron Company, at Crystal Falls, a car-load of "T" rails and splice-bars and bolts, and, in accordance with the agreement, the iron was forwarded by the plaintiff to the Great Western Iron Company, and on its arrival at Crystal Falls the defendant gave his *individual* acceptance for the iron purchased, amounting to $853.87, due in four months, at 8 per cent.; on the receipt of which, the plaintiff wrote the defendant as follows:

"We acknowledge the receipt of your valued favor of the 26th inst., covering acceptance for eight hundred fifty-three and 87-100 dollars, in settlement of account as stated."

Defendant's acceptance was not paid at maturity. About the first of August thereafter, another agent of the plaintiff called upon the defendant for the purpose of collecting or making some disposition of the draft, and, in the negotiation of the matter, the agent, whose name was Timothy S. Casey, acting for the plaintiff, surrendered the draft accepted by the defendant, and therefor received a draft on the Great Western Iron Company, accepted by the company, due in 60 days, for the amount of the overdue draft, less $30, which was paid in money.

The record does not show whether this acceptance of the Great Western Iron Company was ever presented for payment or not. It was not, however, paid when due, and in 1884 the plaintiff brought this suit against the defendant, declaring upon the common counts, accompanied by a bill of particulars, containing as items the car-load of iron.

On the trial, the plaintiff claimed that when its agent, Casey, received the Great Western Iron Company's acceptance, it was upon representations that the Great Western Iron Company was solvent, and that its acceptance would be paid when due; and that neither of these things were true; and that, by reason thereof, the defendant continued to be liable for the value of the iron purchased.

Upon the trial of the cause, the jury found a verdict for the plaintiff for the amount of its claim.

The defendant asks for a review in this Court, and claims that the plaintiff's evidence, undisputed, failed to make a case for it, and that the verdict should ·have been directed by the court accordingly. This position of course disposes of the whole case, if found to be correct.

It is quite clear that, when the iron was purchased, it was for the use of the Great Western Iron Company; also that the defendant gave his own individual acceptance therefor, due in four months, and received credit for the same on the books of the Great Western Company. When the draft became due the defendant gave the acceptance of the company, for what was before his individual paper, due in 60 days, and was then charged with the amount of the company's acceptance upon the company's books. When the defendant gave the plaintiff's agent the Great Western Company's acceptance for his own liability, it does not appear that he was asked to accompany the same with his individual liability in any way, or that he promised it to the plaintiff in any form. If the plaintiff expected that liability to continue for 60 days longer, the ordinary way of securing it would clearly have required the draft to have been drawn in such manner that he would have indorsed it. This was not done, and it has a bearing upon the question in what manner and for what purpose the acceptance of the company was received,—whether as payment or as security. This circumstance, taken in connection with the fact that the defendant's individual acceptance was regarded by the plaintiff as a settlement of the account for the iron purchased, and which was delivered up unconditionally to the defendant, is, I think, clearly sufficient *prima facie* to show that the acceptance of the company was received by the plaintiff as payment.

A bill or note should be regarded as payment whenever it

appears such was the intention of the parties, and "that such was the understanding of the parties may be proved by circumstances, such as the acts and conduct of the parties, as well as by direct proof of an express promise or agreement." 2 Pars. Cont. 624; *Hotchin v. Secor*, 8 Mich. 494; *Sage v. Walker*, 12 Id. 425; *Brown v. Dunckel*, 46 Id. 32; *Burton v. Wells*, 30 Miss. 688; *Patten v. Hood*, 40 Me. 457.

The surrender of the evidence of the debt or liability strongly indicates payment, as whatever is received therefor is to be regarded as payment. *Witherby v. Mann*, 11 Johns. 518; *Johnson v. Weed*, 9 Id. 310; *Gardner v. Gorham*, 1 Doug. 507; *Sears v. Smith*, 2 Mich. 243; *Burchard v. Frazer*, 23 Id. 224; and authorities above cited.

I have been unable to find any evidence in the case tending to contradict the *prima facie* case that the company's acceptance was received in payment of the first draft, and defendant's acceptance thereon. We think that all the testimony shows that the first draft, accepted by the defendant, was received by the plaintiff in payment for the property. These views would seem to be sufficient to dispose of the case, but another point is made by the plaintiff for our consideration.

It is claimed by the plaintiff that, when the company's acceptance was exchanged for that of the defendant, it was with the promise made by him, and relied upon by the plaintiff, that the Great Western Iron Company was solvent, and that its acceptance would be paid when due.

This suit is not brought upon the defendant's acceptance upon the first draft, but for the value of the property purchased, and if the original contract of purchase, whether express or implied, was fully satisfied and performed when the defendant made his acceptance, it is difficult to see upon what ground that original contract of purchase can be revived, so as to entitle the plaintiff to bring this action. The question at once arises, after the defendant gave his acceptance as payment, had the plaintiff any right of action against

the defendant, save upon the acceptance? But we may leave this subject here, and consider now the ground mainly relied upon by the plaintiff for recovery, viz., that the representations relied upon entitle the plaintiff to recover.

The following are the statements made by the defendant when the acceptance of the company was given, as narrated on the stand by the plaintiff's agent, to whom, it is alleged, they were made: Mr. Casey testified, after stating that he was the plaintiff's agent at Chicago, and received the defendant's acceptance of the first draft from plaintiff, with directions to go to Crystal Falls, and make settlement of it, that he met a gentleman on the train, before he got to Crystal Falls, who appeared to be well acquainted in that section of the country, and he got in conversation with him before arriving at the Falls, and then says:

"During the conversation, I asked him in regard to the Great Western Iron Company,—if he knew them, and what their condition was, and as to how much ore they were getting out,—before I knew it was Mr. Hall; and I asked him if he knew Mr. Hall. He said that was his name; so then I told him who I was, and what my business was. I said that I came up there to collect the draft; but if the condition of the works and his own affairs were such that time was what was required, that the company would have no objections in extending,—giving him an extension of time,—as would be reasonable and proper. He stated to me that that was exactly what was wanted; that their affairs were just in such shape then that a little time would enable them to complete some arrangements that they were then to work on,—sinking of shafts, or something of that kind, putting in new machinery,—and that in sixty days he thought there wouldn't be any question at all but what they would be able to pay all of their indebtedness.

"Well, when I went into the town, I made some inquiries of some friends of mine there, and they rather corroborated what Mr. Hall said in regard to the situation at the mine; and I went out there and saw for myself what the condition of it was. I didn't know much about iron mining; but I could see what was going on, and had a very good idea of the condition that the works were in, and I had no hesitation in saying or

believing that Mr. Hall had told the truth in regard to the situation at the mine, and believed, also, that in sixty days, as he stated, the payment would be made.    That is all the conversation that I had.

" Q. I call your attention: Was there anything said further about Mr. Hall giving paper of the Great Western Iron Company for his draft?

" A. Mr. Hall said he would make the settlement with the paper of the Great Western Iron Company, on sixty days' time, if that would be satisfactory,—if the time would be satisfactory,—and that there would not be any question in his mind but what it would be paid at maturity.

" Q. What was done afterwards with this draft of Mr. Hall that you had after these statements were made by Mr. Hall to you?"

In the answer to this, and other questions put to the witness, it appears that the acceptance of the company was given to the agent of the plaintiff, and the *first* draft given up to the company for Mr. Hall.

We have looked through the record, and have found no testimony showing or tending to show that the Great Western Iron Company was not solvent at the time of the exchange of these acceptances.    Neither does it appear but that the defendant had good reason for stating all that he said to the plaintiff's agent.

The agent, it appears, after making both diligent inquiry and careful observation of the standing of the company and the situation of its property, came to the conclusion that what the defendant said was true.    And it does not appear that the solvency of the company was ever tested by the plaintiff, by the presentation of its acceptance for payment.

Under all the circumstances of this case, we think it plainly appears that the plaintiff was not entitled to recover, and the circuit judge should have given the first request to charge presented by counsel for defendant.

The judgment must be reversed, and a new trial granted.

The other Justices concurred.