### ELLIS *v.* BALLOU.

BILLS AND NOTES—PAYMENT—EVIDENCE—RECEIPT OF NEW NOTE.

The payee of a note given by a partnership was informed by the latter that a corporation had been organized, which had succeeded to the partnership property and assumed its liabilities, and a note executed by the corporation was sent to the payee, to be exchanged for the partnership note; but the payee, though retaining the corporation note, failed to return the partnership note. Subsequently, however, he complained to the officers of the corporation of their action in preferring certain creditors, and also made statements to third persons indicating that he regarded the corporation as his debtor. More than three years after the receipt of the corporation note, and after the insolvency of the corporation, the corporation note was returned, and suit brought on the partnership note. *Held*, to show that the corporation note was received in payment of the partnership note, precluding a recovery upon the latter.

Error to Ionia; Davis, J.    Submitted October 22, 1901. Decided January 28, 1902.

*Assumpsit* by Sarah M. Ellis, for the use and benefit of Wilbur D. Ellis, against Willis D. Ballou and Anna A.

Bidwell, formerly copartners as W. D. Ballou & Co., on a promissory note. From a judgment for defendants on verdict directed by the court, plaintiff brings error. Affirmed.

*W. K. Clute,* for appellant.

*A. A. Ellis* and *E. M. Davis,* for appellees.

MOORE, J. This case was brought to recover upwards of $4,000 claimed to be due upon a lost note given by the defendants to the plaintiff. The circuit judge directed a verdict in favor of the defendants. The attorney for the plaintiff claims a verdict should have been directed in her favor. The case is brought here by writ of error.

It will not be practicable to recite the testimony in detail. The record shows the following: The plaintiff is a resident of New York. She is the widow of John Ellis, deceased, and the stepmother of Wilbur D. Ellis. The last named person is one of the executors of the will of John Ellis. The defendants constituted in 1893 the firm of W. D. Ballou & Co. This firm in 1893 borrowed $4,000 of John Ellis, and $3,000 of Mrs. Ellis, giving to Mrs. Ellis a note for $3,000, and to Mr. Ellis two notes of $2,000 each. There is practically no dispute about the facts. It is true, Mrs. Ellis claims her husband did not act for her; but her testimony shows she had no correspondence with the defendants, and the correspondence itself shows Mr. Ellis looked after the note of his wife as well as his own.

In the fall of 1894 Mrs. Bidwell sold her interest in the partnership to Mr. Hall, who lived in New York. In December, 1894, the corporation known as the Ballou Basket Company was organized, and succeeded to the business of W. D. Ballou & Co., which firm transferred to it all its property, and the corporation assumed all the liabilities of the partnership. In December, 1894, $180 was sent to Mr. Ellis to pay the interest on the note belonging to Mrs. Ellis. In December, 1895, Mr. Ellis, by letter, called the attention of Ballou & Co. to the fact that the in-

térest on the $3,000 note and one of the $2,000 notes had not been paid.    In reply to this letter Mr. Ballou sent to John Ellis the note of the corporation for $300 to pay the interest on the $3,000 note, as well as on one of the $2,000 notes. This note was accepted in payment of the interest by Mr. John Ellis.    A little later the following letter was sent:

"BELDING, MICH., December 30, 1895.
"Dr. JOHN ELLIS,
"322 W. 23d St., New York City.
"*Dear Sir:* When Mr. C. J. Hall was here recently, in looking over our bills payable, we were reminded of the fact that the notes you have in your possession are made out in the name of W. D. Ballou & Co., whereas that firm transferred their property to the Ballou Basket Company, who assumed all liabilities.    This being the case, we presume that notes of the Ballou Basket Company would be as acceptable to you as the old notes, and we herewith inclose to you new notes made out in this way. Two of them we have dated December 1st,—the dates to which the interest has been paid.    The third we have dated back to February 13, 1895, to which date interest has been paid.    If this is satisfactory to you, kindly return to us the old notes.
"Yours truly,
"BALLOU BASKET COMPANY,
"W. D. BALLOU, Pres."

Inclosed in this letter was a note for $3,000 to Mrs. Ellis, and two, of $2,000 each, to Mr. Ellis, signed by the Ballou Basket Company.

January 28, 1896, there was sent to Mr. Ellis a letter from the Ballou Basket Company, in which he is told of the embarrassment of the corporation; and, among other things, the following is said:

"By figuring with our local banks, we were finally enabled to arrange for an additional line of credit with them by giving them a bill of sale of our entire property as collateral only.    *  .  *  *    We cannot, therefore, pay any of our obligations maturing after January 25th, upon which date this bill of sale was executed.    We shall therefore have to ask you to renew the $300 note which we gave you at that time for the interest due on your notes. *    *    *    We will pay the interest on the $2,000 due on

the 13th of February, and we do not wish you to have any uneasiness whatever regarding your claims against us, as this arrangement may be only temporary; but, whether temporary or otherwise, it enables us to continue business, whereby we expect to pay every dollar of our indebtedness, and the interest on all that we owe. * * * We inclose you a new note for $300, with interest, and send you a check for the interest due on the $300 maturing on the 8th. We will pay you the interest on this $300 every four months. We trust this will be satisfactory to you.        Yours truly,

"BALLOU BASKET COMPANY,
"W. D. BALLOU, Pres."

These letters were forwarded to Mr. Ellis, who was in California with his wife.

In February a letter was sent in which the following occurred:

"I have been figuring with some parties who have a considerable amount of money, and I have good reason to believe that I could make a sale of $10,000 worth of our stock, provided that you and Mrs. Ellis would take stock in our company to the amount of your claims; *i. e.*, $7,000. If this were done, our total liabilities being about $25,000, we should be able to pay off all of our indebtedness, with the exception of about $8,000."

Mr. Ellis did not return the notes, but he answered these letters, finding fault because the local creditors had been secured, and Mrs. Ellis and himself had been left unsecured. A reply was made to his letter, in which an explanation was made in detail of the circumstances which made it necessary to give this security.

In May, 1896, on their way from California, Mr. and Mrs. Ellis came to Belding, where the manufacturing plant of the Ballou Basket Company was located. Neither of them suggested a refusal to accept the notes of the corporation, and a return of them; but they looked through the plant, and asked for an explanation of the giving of the security to the local creditors. This was made in detail in the presence of Mrs. Ellis. Mr. Ballou's version of what then occurred is as follows:

"After he had heard my full explanation, he says, 'You recognize, don't you, you owe Mrs. Ellis and myself $7,000, just as much as you owed these other people?' I says, 'Certainly I did.' He says, 'Well, do you think it was just an honorable thing to do, to secure all the other principal creditors and shut us out?' I told him that it was the only thing left for me to do, and that I was trying to look after my own interests somewhat; that my equity was behind theirs; * * * that, if I had given an assignment, the whole thing would have gone out of my control, and I wouldn't have stood any show. Of course, I admit it was made somewhat for my interests as well as Dr. Ellis'."

Then Mr. Ballou explained what he meant by his equity being behind theirs; that the claims would have to be paid before the stockholders could get anything.

" Mr. Ellis said the proper thing to have done was to have made an assignment for the benefit of all alike.

" *Q.* That assignment he had talked about was the property of what concern?

"*A.* Ballou Basket Company. That is all I had. I didn't have a dollar's worth, except what I had in that company. * * *

" *Q.* Did either of them in that conversation say one single word about that they did not take the corporation, but that they looked to you and Mrs. Bidwell for their pay?

"*A.* No, sir; was no mention made of any old matters at all."

During this visit at Belding, Mr. Ellis had a talk with Mr. Leonard, the president of the bank which had taken security, and Mr. Van Benschoten, in which he spoke of the claim of $7,000 against the corporation as being one which was just as good as the claim of the bank, and that it was practically cut off by the bank.

After Mr. and Mrs. Ellis returned to New York, other correspondence followed in relation to paying the interest. Mr. John Ellis died in December, 1896. Mr. W. D. Ellis was soon thereafter appointed one of the executors, and soon thereafter made inquiry by letter in relation to these notes. In his letter he stated, among other things:

"It was my father's desire that I should do nothing to injure your success, which I will comply with, if possible; but I must know just where we stand in the matter, as up to the present moment I have not found securities enough (and it is my opinion that there is not enough with what will hereafter be found) to pay off his cash bequests to his relatives and the church. Therefore some of the paper he held will have to be forced."

A detailed statement of the giving of the notes was sent him, and a statement of the affairs of the company was also sent him. Considerable correspondence followed looking to the relief of the company; but its affairs did not improve, and, treating the $7,000 as a claim against the corporation, it became insolvent, and in September, 1897, a receiver was appointed. In April, 1898, one of the mortgages was foreclosed. In May, 1899, Mr. W. D. Ellis returned the notes of the Ballou Basket Company which had been sent to John Ellis December 30, 1895, and claimed to hold the defendants in this case on the original notes. The $3,000 note given by Ballou & Co. was not found. A bond was filed by the plaintiff, and this suit was begun.

It is claimed on the part of the plaintiff that "there is, in general, no presumption that the note of a third person is taken in absolute payment, but the burden of such an agreement is on the debtor;" and that in this case there is no proof the new notes were to be taken as payment of the old ones. We cannot agree with counsel in this conclusion. The plaintiff was notified that all the property of Ballou & Co. had been transferred to the corporation, who assumed all the liabilities of Ballou & Co., and that the new notes were sent to take the place of the notes of Ballou & Co. We do not think, under the circumstances disclosed by this record, the notes so sent can be retained for 3½ years, and then, after the corporation has been closed out, the debt can be asserted against the makers of the original notes. The case is controlled by *Sage* v. *Walker*, 12 Mich. 425, where it is said:

"The effect of taking a second note upon the vitality of the first is sometimes determinable by the law, and sometimes by the contract under which it was given and received. In the present case the correspondence of the parties, which went to make up the contract, shows that the second note was given and received in discharge of the first. Walker sent forward that note to be retained only upon condition of a surrender of the first. Sage was bound to return one or the other. By retaining both, he left it with the defendants to say that he had taken the new note upon the conditions Walker required, and the first note must be considered as surrendered up."

See, also, *Michigan Mut. Life Ins. Co.* v. *Bowes,* 42 Mich. 19 (51 N. W. 962); *Riverside Iron Works* v. *Hall,* 64 Mich. 165 (31 N. W. 152).

Judgment is affirmed.

HOOKER, C. J., GRANT and MONTGOMERY, JJ., concurred. LONG, J., took no part in the decision.