Decided at PENDLETON, July 20, 1895.

# JOHNSTON *v.* BARRILLS.

[41 Pac. 656.]

| 27 | 251 |
| 42 | 485 |
| 27 | 251 |
| 44 | 459 |
| 27 | 251 |
| 46 | 270 |

1. PREFERRED CLAIM FOR WAGES — ACT 1891, PAGE 81 — PRACTICE — PAYMENT OF ACCOUNT BY NOTE.— Where exceptions are filed to a claim for a preference as a laborer or employé, under the terms of section 1 of the act of 1891, ( Laws, 1891, page 81,) such exceptions should raise an issue as to the material allegations of the claim,— the statement of the claim may be considered as a complaint of intervention, and the exceptions as an answer thereto. Unless the exceptions do raise a material issue the claimant need not establish his claim by a judgment. An exception to a claim because the claimants had received a note for the amount raises no material issue, for in Oregon the acceptance of a note is not payment of an account, unless it is so agreed: *Black* v. *Sippy*, 15 Or. 574, approved and followed.

2. "LABORER" AND "EMPLOYEE" DEFINED.*—A laborer or an employé is one who performs work himself, who earns a livelihood by his personal manual labor; therefore a firm engaged to thresh grain for an agreed price are not "laborers" or "employés," and their compensation is not "wages," within the meaning of act February twentieth, eighteen hundred and ninety-one.

3. STATUTORY CONSTRUCTION — LAWS, 1891, PAGE 81.— The act of eighteen hundred and ninety-one giving a preference in payment to certain classes of claims ( Laws, 1891, page 81,) is to be strictly construed.

4. PRESUMPTION — JUDICIAL NOTICE.— Courts will take judicial notice of the general customs of the states in which they sit, and will presume that

---

*Laborer.—In *Wildner* v. *Ferguson*, 18 Am. St. Rep. 495, (42 Minn. 112,) and *Jones* v. *Avery*, 50 Mich. 326, it was held that a traveling salesman is not a "laboring man," the court saying that "laborers" are those whose services are manual or menial, who are responsible for no independent action, but who do a day';s work or a stated job under the direction of a superior. In *Consolidated Tank Line Company* v. *Hunt*, 32 Am. St. Rep. 285, (83 Iowa, 6,) a man who earned his living by peddling oil from a wagon, sometimes driven by himself and sometimes by his minor son, was said to be a "laborer" within the meaning of an exemption statute; but one who is employed at a price per day for himself and his team, the value of his own service not being specially fixed, is neither a "laborer" nor a "mechanic": *Mann* v. *Burt*, 35 Kan. 10. One who takes a contract to burn brick, paying for all needed help, and caring for the machinery with which he is provided to do the work, and agrees to take a certain price per thousand brick burned, is not a "laborer," the court being of opinion that a wage laborer, in contemplation of a statute giving certain rights to claims of "clerks, laborers, or mechanics," is one who depends upon his daily labor for sustenance, that the mere fact that manual labor enters into the performance of a contract does not make the person who does it a laborer: *Henderson* v. *Nott*, 38 Am. St. Rep. 720 (36 Neb. 154). A broader construction has been given by the courts of Georgia, where it is ruled

contracts are carried out as such contracts usually are in that state; thus in Oregon where great quantities of grain are raised, it will be presumed that a contract for threshing a crop of grain has been executed by means of machinery and hired labor, particularly when it appears that a large quantity has been threshed in a very few days.

APPEAL from Wasco: W. L. BRADSHAW, Judge.

This is a proceeding to establish and enforce a preferred claim to the proceeds arising from the sale of attached property. The facts are that T. H. Johnston and G. W. Johnston, partners doing business under the firm name of Johnston Brothers, having commenced an action against one Joseph Barrills, had a quantity of grain, the property of the defendant, attached to satisfy any judgment which they might obtain against him. Within ten days thereafter the claimants, James Brown and J. D. Jones, partners, doing business under the firm name of Brown and Jones, intervened for the purpose of establishing a laborer's claim against the attached property, and, under the provisions of an act of the legislative assembly, entitled "An act to protect employés and laborers in their claims for wages," approved February twentieth, eighteen hundred and ninety-one, (2 Hill's Code, 1902, Laws, 1891, page 81,) filed a statement of

that the monthly wages of a stenographer or private secretary are exempt from execution under a statute granting that privilege to "journeymen, mechanics, and day laborers": *Abrahams* v. *Anderson*, 12 Am. St. Rep. 274 (80 Ga. 570). So with a telegraph operator: *Boyle* v. *Vanderhoof*, 45 Minn. 31. The meaning of the words "laborer," "servant," and "apprentice" are ably discussed by Judge DANFORTH in *Wakefield* v. *Fargo*, 90 N. Y. 214, and the court concludes that one who is employed at a stated yearly salary as a bookkeeper and general manager for a corporation does not come within the meaning of any one of those terms. A railway conductor, either freight or passenger, is not a laborer, (*Miller* v. *Dugas*, 4 Am. St. Rep. 90, 70 Ga. 386,) but a locomotive engineer is: *Sanner* v. *Shivers*, 76 Ga. 335. See also the discussion in *Kyle* v. *Montgomery*, 73 Ga. 343. The following persons have been held not to fall within the meaning of the words "servant" or "laborer": The secretary of a manufacturing company (*Coffin* v. *Reynolds*, 37 N. Y. 640); a civil engineer (*Pennsylvania and Delaware Railroad Company* v. *Leuffer*, 84 Pa. St. 168, 24 Am. Rep. 189); a consulting engineer (*Ericsson* v. *Brown*, 38 Barb. 390); an assistant engineer (*Brockway* v. *Innes*, 39 Mich. 47, 33 Am. Rep. 348); an overseer on a plantation (*Whitaker* v. *Smith*, 81 N. C. 340, 31 Am. Rep. 503); while, on the other hand, a master mechanic or machinist employed by the year has been given the protection of a statute favoring clerks and laborers: *Sleeper* v.

their claim under oath with the sheriff who had attached said property, by which they claimed one hundred and twenty-nine dollars and eighty-eight cents for threshing one thousand eight hundred and twenty bushels of wheat and nine hundred and seventy-two bushels of oats, and demanded the payment of one hundred dollars thereon, as preferred creditors, for services performed for the debtor within ninety days next preceding the attachment. The said officer having reported the statement of said claim to the court, Johnston Brothers, by their attorneys, filed exceptions thereto as follows: "1. Said claim is not founded on a claim for wages; 2. Said claim is not the claim of an employé or laborer, but is upon its face, and in fact, the claim of contractors; 3. That said claim is not such as is contemplated, provided for, or included in the 'Act to protect employés and laborers in their claims for wages,' approved February twentieth, eighteen hundred and ninety-one, and under which act said claimants, Brown and Jones, seek to establish their said claim as preferred; 4. That if said claim of Brown and Jones could, in the first instance, have been considered as a preferred claim upon the attached property,

*Goodwin*, 67 Wis. 590. A superintendent of a natural gas company, who is not a general manager or agent, or an officer of the company, but whose duties are to superintend the digging of trenches and the laying of pipes, and to direct personally on the spot the construction and operation of the work of the company, is a laborer, under a statute identical in terms with the Oregon law of eighteen hundred and ninety-one: *Pendergast* v. *Yandes*, 124 Ind. 159 (republished with the arguments of counsel in 8 L. R. A. 849). A liberal construction was given to a statute much similar to the Oregon law in *Flagstaff Mining Company* v. *Cullins*, 104 U. S. 176. An extended analytical note on the subject of who are laborers within the meaning of statutes giving them preferences is appended to the case of *Tod* v. *Kentucky Union Railroad Company*, 18 L. R. A. 305.

*Employee.*— The term "wages of employés" in an order requiring payment of certain classes of wages does not authorize payment of fees of attorneys employed for special purposes: *Louisville and St. Louis Railway Company* v. *Wilson*, 138 U. S. 501; nor is one who undertakes a contract with a corporation an "employé," within the meaning of a statute giving a lien to employés for labor: *Vane* v. *Newcombe*, 132 U. S. 220. In this case the court concluded that under such statutes employés are those who are servants, and not those who are entirely free of direction or restraint. A similar case is *Leheigh Coal Company* v. *Central Railroad Company*, 29 N. J. Eq. 255, where it was decided that one who contracts to furnish the labor of others is not en-

they, the said Brown and Jones, have waived their right, so far as the plaintiffs are concerned, in that, as to these plaintiffs, they, the said Brown and Jones, have received full payment of their said original debt and claim by receiving and accepting a negotiable promissory note for the full amount from the debtor, Joseph Barrills; 5. That the taking and accepting of said negotiable promissory note by said Brown and Jones from said Joseph Barrills, as appears by the affidavit hereto attached, supporting these exceptions, was, as to these plaintiffs, full payment of their claim under their said alleged contract." With these exceptions Frank Menefee, one of Johnston Brothers' attorneys, filed his affidavit showing that his clients were interested in the attached property to the extent of their demand against Barrills, as alleged in their complaint; and that the claimants had exhibited to him a note which they had accepted from Barrills for the full amount of their threshing debt. It further appears that, upon due consideration of said exceptions and affidavit, the court found that they were sufficient to require the claimants to establish their demand by judgment; but, they having neglected to do so, the claim was rejected,

titled to a preference, because the word "employés" is the equivalent of "laborers." A secretary of a railroad company is not an employé, for the officers of the company are official masters who direct and control the servants and employés: *Wells* v. *Southern Minnesota Railway Company*, 1 Fed. 270. In New York neither a superintendent at an annual salary, an attorney, a contractor who does not himself perform the work to be done, nor a salesman working on a salary with a percentage of sales added are classed as employés entitled to a preference: *People* v. *Remington*, 45 Hun, 329. The case of *Gurney* v. *Atlantic and Great Western Railway Company*, 58 N. Y. 367, is somewhat different from the Remington case, in that the classes of persons to be paid out of the fund were named in an agreement, and the court thought that a more liberal rule of construction should be applied to a stipulation than to the terms of a statute that was an innovation. The court therefore allowed compensation to an attorney for his professional services, on the ground that he was an employé. The case is cited by the court but not followed in *Louisville and St. Louis Railway Company* v. *Wilson*, 138 U. S. 501. An assistant bookkeeper who had also some additional duties was allowed a preference as an employé in *Brown* v. *A. B. C. Fence Company*, 52 Hun, 151. A useful collection of the authorities under statutes like our own will be found under section 215, Cook on Stocks and Stockholders. The latest edition has the most complete note.
—REPORTER.

and the proceedings dismissed, from which judgment they appeal.                                AFFIRMED.

For appellants there was a brief and an oral argument by *Mr. William Wilson.*

For respondents there was a brief and an oral argument by *Messrs. Dufur and Menefee.*

Opinion by MR. JUSTICE MOORE.

Two questions are presented by the record for our consideration: (1) The sufficiency of the exceptions to the statement filed by the claimants; and, (2) whether they are entitled to be considered preferred creditors under the provisions of the act. The statute (Laws, 1891, page 81, § 1,) in substance provides that any person interested in the property which is sought to be subjected to the preferred claim of a laborer or employé may contest the claim, or any part thereof, by filing exceptions thereto, supported by affidavit, in the court having jurisdiction of the property, and thereupon the claimant shall be required to establish his claim by judgment in such court before any part thereof shall be paid. It will be observed that the first, second, and third exceptions are equivalent to a demurrer to the statement, except the allegation in the second that it "is upon its face and in fact a claim of contractors," but this allegation is not supported by affidavit; while the fourth and fifth exceptions present facts intended as a defense to the statement, and the affidavit refers to them only.

1. It is not alleged in any of the exceptions that the note was accepted by the claimants under an agreement between them and Barrills that it should discharge the debt of the latter for which it was given. "Nothing," says LORD, C. J., in *Black* v. *Sippy,* 15 Or. 574, (16 Pac.

418,) "is better settled than that accepting a note is not payment of an account, nor is accepting one note in re newal of another payment of the old note, unless there is an agreement that the note should be accepted in payment." From all that appears in these exceptions, the claimants may have taken the note as a mere evidence of the debt, and with no agreement or intention to accept it in payment of their account. As we view the statute, the exceptions therein provided for are in the nature of an answer to a petition of intervention, and should put in issue the material allegations of the claimants' statement, or some of them, before they could be required to take any steps looking to the establishment of their claim by judgment. If the taking of a negotiable promissory note on account of a precedent debt is to be presumed to be in satisfaction of it, as held in some states, (2 Daniel on Negotiable Instruments, § 1260,) it would have been unnecessary to allege any agreement between the claimants and Barrills on the subject (Bliss on Code Pleading, § 175); but this court, in *Black* v. *Sippy,* 15 Or. 574, (16 Pac. 416,) having adopted the language of Lord HOLT in *Clark* v. *Mundal,* 1 Salk. 124, that "a bill shall never go in discharge of precedent debt, except it be part of the contract that it should be so," the discharge of the debt on account of the threshing cannot be presumed from the acceptance of Barrills' negotiable promissory note, and, not having alleged that the note was accepted under an agreement that it should be in payment of the account, it follows that such exceptions did not present any issue requiring further proceedings in support of the claim.

2.   The act under consideration, so far as it applies to the case at bar, provides that when the property of any person shall be seized upon any process of any court of this state, then the debts owing to laborers or employés which have accrued by reason of their labor or employ-

ment, to an amount not exceeding one hundred dollars to each employé, for work or labor performed within ninety days next preceding the seizure, shall be considered and treated as preferred, and such laborers or employés shall be preferred creditors, and shall first be paid; but if there be not sufficient to pay them in full, the same shall be paid to them *pro rata,* after paying costs. Any laborer or employé desiring to enforce his claim for wages shall present a statement under oath, showing the amount due, after deducting all just credits and set-offs, the kind of work for which said wages are due, and when performed, to the officer or person charged with the execution of said process, within ten days after the seizure of the property on any execution or writ of attachment. The claimants, desiring to avail themselves of the foregoing provisions, filed with the said sheriff their statement under oath, from which it *inter alia* appears: ''That said firm was employed by the said Joseph Barrills on or about the third day of October, eighteen hundred and ninety-four, to work for said Barrills in threshing the crop of grain raised by said Barrills during the season of eighteen hundred and ninety-four, at the rate of five cents per bushel for wheat and four cents per bushel for oats ; and that under said contract said firm began to work on the third day of October, eighteen hundred and ninety-four, and between that day and the eighth day of October, eighteen hundred and ninety-four, said firm performed work, services, and labor five days, and threshed one thousand eight hundred and twenty bushels of wheat, amounting to ninety-one dollars, and nine hundred and seventy-two bushels of oats, amounting to thirty-eight dollars and eighty-eight cents, and in the aggregate amounting to one hundred and twenty-nine dollars and eighty-eight cents. It will be observed, by an examination of the act, that its pro-

27 OR.—33.

visions are intended to secure to a laborer or employé the benefit of his wages, when his employer's property has been levied upon by virtue of any judicial process. A proper definition of the terms "laborer," "employé," and "wages" becomes necessary to correctly interpret the act. Under a statute of Pennsylvania, quite similar to the one in question, the supreme court of that state held that laborers are those who perform with their own hands the contract they make with their employer: *Seider's Appeal,* 46 Pa. St. 57; and in a later case (*Wentroth's Appeal,* 82 Pa. St. 469), Mr. Justice SHARSWOOD, in construing a similar statute, said: "The act meant to favor those who earned their money by the sweat of their own brows, not those who were mere contractors to have the work done, and whose compensation was the profit they would realize on the transaction. In *Campfield* v. *Lang,* 25 Fed. 128, it was held that one who performed service in sawing up lumber, which involved capital, machinery, and the labor of employés, was not a "laborer," and that a given compensation per thousand feet to be paid for sawing the lumber was not "wages," in the sense in which the terms were used in the statute. In *People* v. *Board of Police,* 75 N. Y. 39, MILLER, J., in defining one of the terms, says: "Employés are usually considered as embracing laborers and servants, and those occupying inferior positions." From the whole scope and tenor of the act in question it is apparant that the terms "laborer" and "employé," as there used, are synonymous, and relate to a class of persons who by their own manual labor earn a livelihood. Endlich on Interpretation of Statute, § 99. The words "employer" and "employé" are doubtless the outgrowth of the old terms of "master" and "servant," and have been adopted by reason of and in deference to the exalted position labor has acquired by the education of the masses.

3. The statute has wisely provided an easy and speedy remedy by means of which the laborer or employé, in case the property of his employer has been levied upon under judicial process, may obtain a portion, at least, of the wages due him for his manual labor. The act, however, being in derogation of the common law, should be strictly construed, and no person should be entitled to its benefits unless he is a "laborer," and makes a *prima facie* showing that his claim comes within its provisions.

4. There being in the statement no affirmative allegation that the grain was threshed by machinery, or that the work involved capital and labor, and the allegation in the exceptions that "said claim is not the claim of an employé or laborer, but is upon its face and in fact a claim of contractors," not having been supported by affidavit, the question is presented whether the trial court committed an error by invoking the presumption that the grain was threshed by a threshing machine, and dismissing the claim upon such presumption. Mr. Rice in his work on Evidence, (Vol. I, § 30,) in commenting upon a presumption of fact, says: "It is presumed that regular and ordinary means are adopted for a given end. So where the means calculated to attain a certain end appear to have been adopted, and the end itself appears to have been attained, a particular completion will be presumed." In a state like this, containing vast fields of wheat, barley, oats, and rye, it cannot be presumed that any other mode of threshing grain exists than by machinery. If, in those states which are noted for the quantity of grain annually raised, A engage B to thresh his crop of grain, and nothing is said about the means to be adopted to accomplish the result, can there be a doubt that the parties were contracting with reference to the implied fact that the grain was to be threshed by a threshing machine? Persons of ordinary intelligence would so understand and interpret

the contract, and there is no just reason why courts should assume a greater degree of ignorance. It must, therefore, be presumed, from an inspection of the claimants' statement, showing the rapidity with which the work was done, that the grain was threshed by means of a threshing machine, the operation of which involved an outlay of capital and the employment of labor, and that the work was not done by their manual labor alone. The claimants not having been "laborers" or "employés," the compensation which they were to have received was not "wages," within the meaning of the act; and hence their claim was not entitled to preference, and the court committed no error in dismissing the proceedings. It follows that the judgment must be affirmed, and it is so ordered.

AFFIRMED.

Decided at PENDLETON, July 20, 1895.