## STRINGHAM v. MUTUAL INS. CO.

[75 Pac. 822.]

LIFE INSURANCE—DELIVERY AND ACCEPTANCE OF POLICY.

1. A contract of life insurance is not consummated until the policy is delivered and accepted, or those conditions waived.

LIFE INSURANCE—MEANING OF WORD "ISSUED" IN APPLICATION.

2. Where an applicant for a life insurance policy stated in writing that the answers to certain questions contained in his application were warranted true, that he would accept the policy, that it should not take effect until the first premium should have been paid during his continuance in good health, and the policy have been signed and "issued," and gave his note for the first premium, taking a receipt therefor which recited that if the note should be paid when due it would be in full for the first premium, provided a policy should be "issued" on the said application, the term "issued" meant the signing and execution of the policy by the officers of the company, and did not include delivery.

CONSTRUCTION OF DOUBTFUL TERMS.

3. Where an application for insurance is susceptible of two constructions, it should be construed most strongly against the company.

NOTE AS PAYMENT OF AN OBLIGATION.

4. Acceptance of a promissory note is not a discharge of the debt thereby represented unless the parties so agree.

WAIVER OF PAYMENT OF PREMIUM BY ACCEPTING NOTE.

5. Acceptance of the note of an applicant for insurance with the application, and the subsequent preparation of the policy after the applicant has become sick, but without knowledge of that fact, does not constitue a waiver of the condition that the first premium must be paid during the continuance in good health of the applicant.

PAYING PREMIUM AFTER APPLICANT'S DEATH.

6. Where a policy of life insurance is fully signed but not delivered before the applicant's death, the subsequent payment of the premium, without knowledge of the death by the company, does not affect the rights of the parties, for they became fixed by the death.

From Multnomah: JOHN B. CLELAND, Judge.

Action by Maud Marie Stringham against the Mutual Life Insurance Company of New York. The complaint herein states, in purport, that on July 17, 1901, Leroy Stringham made application to the defendant at Portland, Oregon, for a policy of insurance upon his life in the sum of $1,000, payable in the event of his death to his wife, the plaintiff; that the application was accepted by the defendant, and the first annual premium therefor, of about $30, was paid to and accepted by it, whereby the defendant contracted and agreed to insure and did insure the life of Stringham for the term of one year from July 17th, and agreed to pay to the plaintiff, in the event of his death within the year, the said sum of $1,000; that Stringham died on July 28th, before the policy was delivered to him, but while the contract of insurance was in full force and effect, as alleged.

The answer admits the making of the application and the death of Stringham, but specifically controverts the other allegations of the complaint. For a further answer defendant alleges, in substance: That on the day named Stringham made and signed a certain application to the defendant for a policy of insurance upon his life for $1,000, payable in the event of his death to his wife, setting out the same by copy; that he gave the application to one W. A. Cummins, a soliciting agent engaged in the business of soliciting life insurance, to be forwarded through Sherwood Gillespy, the general agent of the defendant for the states of Oregon and Washington, whose office was and is at Seattle, Washington, to defendant, at its office at New York City; that at the same time Stringham signed and

gave to said Cummins his promissory note, made payable to and indorsed by himself, for the sum of $29.22, payable 60 days after date, and received from Cummins a receipt, of which the following is a copy:

"Amount, $29.22.                                Insurance, $1,000.
                  Portland, Oregon, July 17, 1901.
Received from Leroy L. Stringham his note, due sixty days from date, which if paid when due will be in full for the first annual premium for a policy of insurance for $1,000 on the life of himself on L. 20-20 plan, provided a policy is issued on his application made this day.   If policy is not issued, above described note to be returned to said Leroy L. Stringham.                          W. A. Cummins."

Defendant further alleges that said application was forwarded through its agent at Seattle, Washington, to the defendant, and received at New York City on July 25, 1901, and approved by it on July 27th, without knowledge of the illness of Stringham, he having been stricken with pneumonia on the 24th; whereupon it caused to be made out and signed by its secretary a policy of insurance upon the life of Stringham agreeable to the application, and mailed the same to its agent at Seattle, to be by said agent issued to Stringham upon the payment of the first annual premium, provided Stringham was at the time the said policy should be issued in the same condition of good health as at the date of the application; that the policy was received by Gillespy at Seattle on the 2d of August, 1901, and by him forwarded to C. H. Waterman, the company's agent at Portland, Oregon, to be issued to Stringham upon payment by him of the first annual premium; that the policy was received by Waterman on the 5th of August, but he, having learned of the death of Stringham, refused to issue such policy, but returned it to the company at New York City; that on July 30th, two days after the death of Stringham, the same being unknown to Water-

man, one W. P. Dillon, claiming to act on behalf of Stringham, but without authority, being at the same time cognizant of his sickness and death, paid to Waterman the sum of $29.22, to be applied in payment of the note executed by Stringham and delivered to Cummins, and the same was accordingly received by Waterman, and subsequently, on learning of the death of Stringham, he repaid it to Dillon.

The reply admits the making of the application, the giving of the note, and the execution of the receipt by Cummins, its delivery to Stringham, the forwarding of the application to the company at New York, its approval by the company, the making out and signing of the policy of insurance by defendant's secretary agreeable to the application, the mailing of the policy to Gillespy, its receipt in Portland by Waterman, the payment of the premium by Dillon to Waterman and its subsequent return to Dillon, practically as alleged in the answer, but it denies that Stringham became ill on the 24th of July, or that said policy was mailed to Gillespy to be by him issued to Stringham upon the payment of the first annual premium providing Stringham was at the time in good condition of health, or that it was forwarded to Waterman at Portland, Oregon, to be by him issued upon such payment of premium. For a further reply plaintiff alleges that at the time of making the application it was agreed between the defendant and Stringham that the insurance on his life should not take effect until the first premium should have been paid during his continuance in good health and the policy should have been signed by the secretary of the company and issued, and that Stringham paid to it the said first premium of $29.22, in accordance with the said agreement, while he was in good health; that at the time of making said application the payment of such premium in money was not required by the company, and the defend-

ant agreed to and did accept Stringham's note for the same, being the note set out in the answer, in full payment and settlement thereof; that thereafter, on receipt of the application at New York City, the defendant caused the policy to be made out, signed by the secretary, and issued as agreed upon; that said policy was mailed to the agent of the defendant in Portland for delivery to Stringham, but that before delivery could be had Stringham died, which was after the premium had been paid during the good health of Stringham, and that at the time of the death of Stringham the policy of insurance was in full force and effect. Upon this state of the record the defendant moved the court for a judgment upon the pleadings, and that the cause be dismissed, at the cost of plaintiff, which was over-ruled. The parties then proceeded to trial, and the plaintiff rested after having offered evidence tending to show that Waterman was the resident agent of the defendant for Oregon, and kept an office in Portland; that plaintiff made application to the company for payment of her claim, the receipt of which was acknowledged by it, and payment declined, on the ground that the alleged policy had not been issued during the applicant's continuance in good health, and the stipulation of the parties that Stringham became ill with pneumonia on the 24th of July, 1901, that a physician was called on that day, and that he died on the 28th of July. The defendant thereupon moved for a judgment of nonsuit against the plaintiff. The motion being denied, it was further stipulated that the defendant was not notified of the change in Stringham's condition of health until after his death, and, both parties having rested, the court instructed the jury to return a verdict for plaintiff as demanded, and, judgment having been entered accordingly, the defendant appeals. Among the errors assigned are (1) the overruling of defendant's motion for judgment on the pleadings, (2) the overruling of its mo-

tion for judgment of nonsuit, and (3) the direction of a verdict for plaintiff as demanded in the complaint.

REVERSED.

For appellant there was an oral argument by *Mr. Ossian Franklin Paxton*, with a brief over the names of *Struve, Hughes & McMicken*, and *Paxton, Beach & Simon*, to this effect :

I. The agreement that the insurance should not take effect until the first premium should have been paid during Stringham's continuance in good health, and the policy should have been signed by the secretary of the company and issued, is valid and binding: *Giddings* v. *Northwestern Mut. L. Ins. Co.* 102 U. S. 108 ; *Ray* v. *Security T. & L. Ins. Co.* 126 N. C. 166 (35 S. E. 246); *McCully's Admr.* v. *Phœnix Mut. L. Ins. Co.* 18 W. Va. 782; *Thompson* v. *Travelers' Ins. Co.* 11 N. D. 274 (91 N. W. 75); *Ormond* v. *Fidelity L. Assoc.* 96 N. C. 158 (1 S. E. 796); *Rees* v. *Fidelity Mut. L. Assoc.* 111 Ga. 482 (36 S. E. 637); *Kohen* v. *Mutual R. F. L. Assoc.* 28 Fed. 705 ; *Misselhorn* v. *Mutual R. F. L. Assoc.* 30 Fed. 545; *Paine* v. *Pacific Mut. L. Ins. Co.* 51 Fed. 689–693; *McMaster* v. *New York L. Ins. Co.* 99 Fed. 856–866.

II. The policy applied for by Stringham was never "issued"; it was signed, but not delivered: *Sisk* v. *Citizens' Ins. Co.* 16 Ind. App. 565 (45 N. E. 804); *State* v. *Pierce*, 52 Kan. 521–528 (35 Pac. 19); *Burton* v. *Deleplain*, 25 Mo. App. 55–59; *Folks* v. *Yost*, 54 Mo. App. 54–59 ; *Wray* v. *Tuskegee Ins. Co.* 34 Ala. 58–64; *Maggett* v. *Roberts*, 112 N. C. 71 (16 S. E. 919); *Pease* v. *Ritchie*, 132 Ill. 638–645 (24 N. E. 433, 8 L. R. A. 566); *Van Hoesen* v. *Holley*, 9 Wend. 209; *Ross* v. *Luther*, 4 Cow. 158 (15 Am. Dec. 341); *Visscher* v. *Gansevoort*, 18 Johns. 496 ; 1 Rap. & L.'s Law Dict. 683.

III. The taking of the note of Stringham by the solicitor who obtained the application was not a payment of the

premium to the company, and was not even a payment to the solicitor. The receipt of a note, either for a precedent or contemporaneous debt, is not presumed to be a payment of the debt: *Gardner* v. *Gorham*, 1 Doug. (Mich.) 507; *Black* v. *Sippy*, 15 Or. 574 (16 Pac. 418); *Johnston* v. *Barrills*, 27 Or. 251 (50 Am. St. Rep. 717, 41 Pac. 656); *Devlin* v. *Chamblin*, 6 Minn. *468; *Bill* v. *Porter*, 9 Conn. *24, *30; *Merrill* v. *Kenyon*, 48 Conn. 314 (40 Am. Rep. 174); *Bradley* v. *Harwi*, 43 Kan. 314 (23 Pac. 566); *Patapsco Ins. Co.* v. *Smith*, 6 Harr. & J. *166 (14 Am. Dec. 268); *Leach* v. *Church*, 15 Ohio St. 169; *Vancleef* v. *Therasson*, 3 Pick. 12; *Dunham* v. *Morse*, 158 Mass. 132 (32 N. E. 1116, 35 Am. St. Rep. 473).

The payment required by the application is a payment in money, and an agent's authority to collect premiums does not authorize him to accept anything except money in payment thereof: *Hoffman* v. *Hancock L. Ins. Co.* 92 U. S. 161; *Continental L. Ins. Co.* v. *Willets*, 24 Mich. *268; *Carter* v. *Cotton States L. Ins. Co.* 56 Ga. 237; *Anchor L. Ins. Co.* v. *Pease*, 44 How. Pr. 385; *Willcutts* v. *Northwestern Mut. L. Ins. Co.* 81 Ind. 300; *Tomsecek* v. *Travelers' Ins. Co.* 113 Wis. 114 (88 N. W. 1013, 57 L. R. A. 455, 90 Am. St. Rep. 846); *Equitable L. Assur. Soc.* v. *Cole*, 13 Tex. Civ. App. 486 (35 S. W. 720).

IV. No contract was ever made to insure Stringham's life, the preliminary agreement not having been completed by a delivery of a policy and the payment of the first premium during his good health: *Ray* v. *Security Trust & L. Ins. Co.* 126 N. C. 166 (35 S. E. 246); *Thompson* v. *Travelers' Ins. Co.* 11 N. Dak. 274 (91 N. W. 75); *Continental L. Ins. Co.* v. *Willets*, 24 Mich. *268; *Allen* v. *Massachusetts Mut. Acc. Assoc.* 167 Mass. 18 (44 N. E. 1053); *MacMaster* v. *New York L. Ins. Co.* 99 Fed. 856, 870; *Misselhorn* v. *Mutual R. F. L. Assoc.* 30 Fed, 545; *McCully's Admr.* v. *Phœnix Mut. L. Ins. Co.* 18 W. Va. 782; *Kohen* v. *Mutual R. F. L. Assoc.*

28 Fed. 705; *Giddings* v. *Northwestern Mut. L. Ins. Co.* 102 U. S. 108; *Hawley* v. *Michigan Mut. L. Ins. Co.* 92 Iowa, 593 (61 N. W. 201); *Rossiter* v. *Ætna L. Ins. Co.* 91 Wis. 121 (64 N. W. 876); *McClave* v. *Mutual R. F. L. Assoc.* 55 N. J. L. 187 (26 Atl. Rep. 78); *Paine* v. *Pacific Mut. L. Ins. Co.* 51 Fed. 689, 693; *Ormond* v. *Fidelity L. Assoc.* 96 N. C. 158 (1 S. E. 796); *Whiteley* v. *P. & A. Ins. Co.* 71 N. C. 480; *Dickerson's Admr.* v. *Provident Sav. L. A. Soc.* 21 Ky. L. Rep. 611 (52 S. W. 825); *Rees* v. *Fidelity Mut. L. Ins. Co.* 111 Ga. 482 (36 S. E. 637); *Mutual R. F. L. Assoc.* v. *Simmons,* 107 Fed. 418; *Davis* v. *Massachusetts Mut. L. Ins. Co.* 13 Blatch. 462 (7 Fed. Cas. No. 3,642); *Markey* v. *Mutual Ben. L. Ins. Co.* 103 Mass. 78; S. C. (2d appeal) 118 Mass. 178; S. C. (3d ·appeal) 126 Mass. 158.

For respondent there was an oral argument by *Mr. Geo. A. Brodie* and *Mr. Dan R. Murphy,* with a brief over the names of *G. A. Brodie, D. R. Murphy,* and *Isaac Swett,* to this effect:

There are but two points or questions for the court to consider on this appeal, and they are: (1) Was the first premium paid by Stringham during his continuance in good health, and (2) was the policy signed by the secretary of the company and issued?

All the facts are admitted by the pleadings or are stipulated in evidence, so that there was nothing for the court below to do but to construe the contract made between the parties. There was no issue of fact for the jury to decide, and said court having decided the two questions above stated in the affirmative, nothing else could be done but to direct a verdict in favor of the plaintiff. And that the court was right in its conclusion we think we will be able to show in our argument, during the course of which we will refer to the following authorities: 16 Am. & Eng. Enc. Law, (2 ed.) 859; *New York L. Ins. Co.* v. *McGowan,*

18 Kan. 300; *Union Cent. L. Ins. Co.* v. *Taggart,* 55 Minn. 95 (43 Am. St. Rep. 474, 56 N. W. 579); *Carson* v. *Jersey City L. Ins. Co.* 43 N. J. L. 300 (39 Am. Rep. 584); *Tayloe* v. *Merchants' F. Ins. Co.* 50 U. S. (9 How.) 390–402; *Griffin* v. *New York L. Ins. Co.* 36 Pa. St. 113–117; *Symonds* v. *New York Mut. L. Ins. Co.* 23 Minn. 493; *Farnum* v. *Phœnix Ins. Co.* 23 Pa. St. 869; *New York L. Ins. Co.* v. *Babcock,* 104 Ga. 6 (742 L. R. A. 88, 69 Am. St. Rep. 134, 30 S. E. 273).

Mr. Justice Wolverton, after stating the facts as above, delivered the opinion of the court.

1. This action is upon a contract of insurance formulated by the application and its accompanying documents, and the acceptance or approval thereof by the company. While it is alleged that the policy is in full force and effect, that instrument is not made the basis of the action. It is not set out, nor is the effect of its provisions stated in the pleadings, nor was it offered in evidence, or any of its terms or conditions alluded to, for the purpose of controlling the action, or in any manner defining or fixing the rights and liabilities of the parties concerned. The policy was never in fact delivered by the company to the applicant. This is conceded both by the allegations of the complaint and the reply. Of course, there could be no delivery to him after his death, by which event the correlative rights and obligations of the parties became finally fixed and established: *Thompson* v. *Travelers' Ins. Co.* 11 N. D. 274 (91 N. W. 75). It is said: "The policy of insurance is the final contract between the parties, and the effect of its acceptance is to supersede all preliminary agreements in respect to insurance": 16 Am. & Eng. Enc. Law, (2 ed.) 856. So that the final consummation of the contract of insurance includes both the delivery of the policy and its acceptance by the insured. The applicant has a right to reject the policy if it does not conform to

the agreement of the parties for its execution, and, until delivery and acceptance, either expressly or by inference or implication, the contract is not finally executed, although it may be so far assented to as to give a right of action thereon.

2. To determine, therefore, whether plaintiff has a cause of action as alleged, we have but to look to the application which was made for insurance, the note executed in connection therewith, the receipt given by Cummins and accepted by the applicant, and the defendant's subsequent action in reference thereto. The application, by its terms, is made the basis and a part of the proposed contract of insurance, one of the stipulations on the part of Stringham being as follows:

"I hereby agree that all the following statements and answers, and all those that I make to the company's medical examiner, in continuation of this application, are by me warranted to be true, and are offered to the company as a consideration of the contract, which I hereby agree to accept, and which shall not take effect until the first premium shall have been paid, during my continuance in good health, and the policy shall have been signed by the secretary of the company and issued."

The receipt executed and delivered by Cummins to Stringham stipulates, on the other hand, that the note, "if paid when due, will be in full for the first annual premium for a policy of insurance for $1,000, * * provided a policy is issued on his application made this day." These instruments must be construed together to arrive at the real agreement and understanding of the contracting parties. By the application it is made a condition of the contract's becoming effective that the first premium shall have been paid during the continuance in good health of the applicant, and the policy shall have been signed by the secretary of the company and issued. If these things have been done and performed, plaintiff's

right of action upon the contract of insurance has accrued; otherwise not.

We will dispose first of the controversy relative to the meaning of the term "issued," as employed in the application, it being insisted on the part of the plaintiff that it signifies simply the completion and signing up of the policy by the secretary and its execution at the office of the company, while, upon the other hand, it is contended that it includes as well the delivery of the policy to the applicant. Among the many cases that have passed under our notice, the term seems to have been used interchangeably to denote either one or the other of these conditions, but we have been cited to no case that attempts to determine as a general rule when an insurance policy is deemed issued. We are impressed that the term has a double application, and its meaning is to be determined by the relation in which it is employed. In the present instance it is obvious that the especial purpose of the stipulation with reference to the payment of the first annual premium, the signing of the policy by the secretary and its issuance, was to fix upon some definite act or acts in the course of the negotiations that should be taken or construed as indicating an acceptance or approval of the application by the company, and thus to conclude the contract so as to make it binding upon the company, and entitle the applicant to his insurance. It is often difficult to determine when an offer has been assented to, and it was to obviate such an embarrassment that the stipulation was introduced into the application. As it relates to the issuance of the policy, the purpose here suggested is fully subserved when the instrument is drafted in complete form, signed by the secretary, and fully executed at the office of the company. A delivery to the applicant is not necessary as an indication of such acceptance, unless the parties should see fit to make it so. By another clause of

the application, the soliciting agent, on the payment of the premium, might have furnished the applicant with a binding receipt, signed by the secretary of the company, making the insurance in force from the date of such application, but with the proviso that the application should be approved, "and the policy duly signed by°the secretary at the head office of the company and issued." Although no such receipt was given here, the clause is valuable for construction, and, when the stipulation now being discussed is read in connection with it, there can scarcely be a mistake as to the intendment of the parties, which is that the company should become bound at a time anterior to the final delivery of the policy to and its acceptance by the insured, which time was to be indicated in part by the act of the company in issuing the policy at the head office. We conclude, therefore, that the term "issued" was used as indicative of the completed signing up and execution of the instrument, making it ready for delivery.

3. This construction is suitable and reasonable, although it must be admitted that the term as employed is not without ambiguity. But if it may be said that it is susceptible of two constructions, and there is a doubt as to its true meaning, then it should be construed, as we have construed it, most strongly against the insurer: Kerr, Ins. § 65; 3 Berryman, Digest Law Ins. § 3012.

4. The next inquiry is, was the note taken and accepted in payment of the first annual premium? We are disposed to treat Cummins as the agent of the company, clothed with full authority to take the application, accept the note, and issue the kind of receipt here involved, and thereby bind the company to the same extent as if the dealings were had with a general agent, with full authority in the premises. The form of the documents was evidently authorized by the company, and the authority of Cummins, he having

used them, and the company evidently having acted upon them, must be considered ample to make the very kind of use of them for which they were adapted. The receipt shows the condition upon which the note was executed and delivered to Cummins, or, we may say, to the company; that is, that it was in full for the first annual premium, if paid when due, not that it was in present payment of such premium. So that, construing the application and receipt together, they simply mean that, if the note is paid when due, and during the continuance in good health of the applicant, both elements or conditions concurring, then that the premium should be considered as paid, and, if the policy shall have been signed by the secretary and issued meanwhile, the contract of insurance would be fully effectuated, but not until these things shall have been accomplished. It has been firmly settled by this court that the acceptance of a note is not to be considered as taken in discharge or payment of the debt unless it is at the same time so agreed and understood : *Black* v. *Sippy*, 15 Or. 574 (16 Pac. 418); *Johnston* v. *Barrills*, 27 Or. 251 (41 Pac. 656, 50 Am. St. Rep. 717); *Schreyer* v. *Turner Flouring Co.* 29 Or. 1, 4 (43 Pac. 719); *Kiernan* v. *Kratz*, 42 Or. 474, 484, 485 (69 Pac. 1027, 70 Pac. 506). There is here not only no agreement shown that the note was accepted as payment of the first annual premium, but the receipt negatives the idea, and expressly indicates that it was not to be so taken unless paid when due during the continuance in good health of the applicant. Such is manifestly the contract of the parties, and none other can reasonably be extracted from the negotiations. The character of the contract is not above criticism as in a measure delusive, but, the applicant having deliberately entered into it, he must be presumed to have understood its purport and meaning, and the courts cannot do otherwise than enforce it, unless

it was the result of fraud or mistake, which is not claimed for it.

5. Counsel for plaintiff seem to think that the acceptance by the company of the note of the applicant for the amount of the first premium and the issuance of the policy, although such issuance was subsequent to the time of the applicant's becoming ill with pneumonia, and without knowledge on the part of the company of such illness, was tantamount to a waiver of the condition in the application that the first premium shall have been paid during the continuance in good health of the applicant, and that the note was therefore received in present payment of the first annual premium, notwithstanding the stipulation contained in the receipt. It is impossible to see how such a result could follow, when, as we have seen, the contract depends upon the application, note, and receipt, construed together, and the acceptance of the application thus formulated, which was to be evidenced by the signing of the policy by the company's secretary and its issuance. The stipulation contained in the application and the receipt showing the conditions upon which the note was given constitute the very terms of the contract consummated by the acceptance on the part the company, and there could be no waiver of any condition entering into and going to make up the contract. A contract once made may be modified, and provisions favorable to either party may be relaxed. And "it seems to be settled," say the Supreme Court of California, in *Farnum* v. *Phœnix Ins. Co.* 83 Cal. 246, 252 (23 Pac. 869, 871, 17 Am. St. Rep. 233), "by a controlling preponderance of authority, that an express provision in a policy of insurance that the company shall not be liable on the policy until the premium be actually paid is waived by the unconditional delivery of the policy to the assured as a completed and executed contract under an express or implied agreement that a credit shall be given for the pre-

mium, and that in such case the company is liable for a loss which may occur during the period of the credit"; citing a large array of authorities. The doctrine has the approval, also, of a later case of the same court (*Griffith* v. *New York Life Ins. Co.* 101 Cal. 527, 36 Pac. 113, 40 Am. St. Rep. 96), and is applicable as prescribing a limitation upon the insurer where the contract of insurance is fully consummated by a completed delivery of the policy under an express or implied agreement for an extension of credit; but such is not the case here. If there had been a delivery of the policy here, and Stringham had accepted it, and the company had then retained his note under such circumstances as to lead him to believe that he had a valid present insurance, there would have been larger grounds for insisting upon a waiver of the condition of payment during the good health of the applicant. There has been no such a delivery of the policy, and no waiver, if any might have ensued by its delivery without further insistance upon payment of the premium, can be invoked.

6. The payment of the premium by Dillon to Waterman, the company's agent at Portland, without the knowledge of Waterman or the company of the fact of Stringham's death, could not alter the case in the least, nor operate as a waiver on the part of the company of any condition that it might otherwise have insisted upon; the rights of the parties, as we have seen, having become fixed by his death.

It follows from these considerations that the plaintiff has not established her cause of action against the defendant upon the alleged contract of insurance, the premium not having been paid during Stringham's continuance in good health, as contemplated by the agreement of the parties. Passing the error assigned relative to the motion for judgment on the pleadings, we are clear that there was error in directing a verdict for the plaintiff, and that the defendant's motion for judgment of nonsuit should have

been granted. The judgment will therefore be reversed, and the cause remanded for such further proceedings as may be deemed proper, not inconsistent with this opinion.

REVERSED.

---

Decided 21 March, rehearing denied 13 June, 1904.