Submitted on briefs May 19, reversed and judgment rendered June 19, motion to recall mandate filed July 16, allowed July 31, 1917.

# RINER *v.* SOUTHWESTERN SURETY INS. CO.*

## (165 Pac. 684; 166 Pac. 952.)

**Insurance—Indemnity Insurance—Bad Faith.**

1. Where an indemnity insurance policy provided that no action shall lie against the company for any loss or expense under the policy unless for loss or expense actually paid in satisfaction of a final judgment within 90 days from the date of the judgment and after trial of the issue, actual satisfaction of a judgment by the delivery and acceptance of a note did not amount to bad faith, although the insured and his attorneys knew that their satisfaction of the judgment would enable them to compel the insurance company to pay the amount of the judgment.

**Insurance—Indemnity Insurance—Satisfaction of Judgment—Evidence —Sufficiency.**

2. In an action on a policy of indemnity insurance to recover the amount of a loss sustained and paid in satisfaction of a judgment in favor of an injured employee in which it appeared that the judgment was satisfied by the delivery and acceptance of a note, evidence *held* to show that the judgment was in truth satisfied, and that the note was actually given and accepted in payment of the judgment, and that it was clearly intended and understood that the note extinguished the judgment, and that the parties acted in good faith without any agreement that any step in the transaction should be considered in any way different from its outward appearance.

**Evidence—Presumptions—Failure to Produce Witness.**

3. In an action on a policy of indemnity insurance to recover the amount of loss sustained and paid in satisfaction of a judgment in favor of an injured employee by delivery of a note, where it appeared that the defendant knew of the whereabouts of such employee, it is not in a position to claim that the failure of the employee to appear as a witness for plaintiff argues bad faith.

> [As to failure to call witness as raising presumption against party to action, see note in Ann. Cas. 1913D, 559.]

**Payment—Sufficiency—Payment by Note.**

4. Although the delivery and acceptance of a note does not extinguish the original indebtedness unless the parties agree to give and accept the note as absolute payment, the agreement need not be expressed in terms, but it is sufficient if it appears from all the facts and circumstances that the parties intended and understood that the note should be received in absolute payment of the antecedent debt.

---

*Giving note' as loss or damage within contract of indemnity, see notes in 9 L. R. A. (N. S.) 478; 20 L. R. A. (N. S.) 956; 48 L. R. A. (N. S.) 195.                    REPORTER.

Insurance—Indemnity Insurance—Satisfaction of Judgment—Evidence
—Sufficiency.

5. In an action on a policy of indemnity insurance to recover loss
sustained and paid in satisfaction of a judgment in favor of an in-
jured employee by the delivery of a note, in which it appeared that
the judgment was satisfied of record, evidence *held* to show that the
parties agreed that the note should extinguish the judgment.

Insurance—Indemnity Insurance—"Loss Actually Sustained."

6. The giving of a note in satisfaction of a judgment in an em-
ployee's action for injuries amounts to a loss actually sustained by the
employer within the meaning of a provision of an indemnity insur-
ance policy providing that no action shall be allowed against the
insurance company for any loss or expense under the policy unless
it shall be brought for loss or expense actually sustained and paid in
satisfaction of a final judgment, etc.

### ON REHEARING.

Stipulations—Construction.

7. Where, in an action on an indemnity policy, a stipulation is
filed on day of final judgment, though entered into prior thereto, but
subsequent to accrual of liability of defendant to plaintiff, that cer-
tain sum in which plaintiff is indebted to defendant, with interest
thereon, is a proper legal setoff, which does not fix date to which in-
terest is to be calculated and leaves blank space for insertion of
amount, where judgment of lower court allows interest to date of
its rendition and plaintiff does not complain of it in that respect until
after rendition of judgment in Supreme Court, it must be inferred
from language of stipulation, surrounding circumstances, and actions
of parties that they intended interest should run until judgment en-
tered in trial court, not merely till liability of defendant to plaintiff
accrued.

From Multnomah: HENRY E. MCGINN, Judge.

In Banc.    Statement by MR. JUSTICE HARRIS.

This is an action on an indemnity insurance policy.
The Southwestern Surety Insurance Company issued
its policy to E. W. Riner and E. B. Hill, who were part-
ners doing business under the firm name of Riner &
Hill and were engaged in constructing a sewer for the
City of Portland.    By the terms of the policy Riner &
Hill were insured against loss and expense arising
from claims for damages on account of bodily injuries
accidentally suffered by any employee of the insured
while engaged in work on the sewer.    The insured
agreed that if suit should be brought on account of an

accident they would immediately forward all papers served upon them to the insurance company, and the company agreed at its own expense to settle or defend all such suits. The provision of the policy made most prominent by this litigation is known as paragraph L and reads thus:

"No action shall lie against the company for any loss or expense under this policy unless it shall be brought for loss or expense actually sustained and paid in satisfaction of a final judgment, within ninety days from the date of said judgment and after trial of the issue."

Abel Markkane, one of the employees of Riner & Hill, was injured while working on the sewer. Markkane commenced an action against Riner & Hill for damages on account of the injury and on February 18, 1914, he obtained a judgment for $2,588.06. The insurance company defended the action in behalf of Riner & Hill. Riner executed a promissory note on May 16, 1914, in the sum of $2,627.42 payable with interest at the rate of 7 per cent per annum on or before one year after date to the order of Abel Markkane. The note was accepted by Abel Markkane and one of his attorneys of record satisfied the judgment. The principal sum named in the note was equal to the principal sum named in the judgment with interest at the rate of 6 per cent per annum, the rate fixed by law. Hill assigned all his interest in the policy to Riner who began this action when the insurance company refused to pay. The parties waived a jury and submitted the cause to the court on the depositions of three witnesses, supplemented by a written stipulation of facts. Acting on the theory that the delivery and acceptance of a note did not constitute loss and payment within the

meaning of the policy, the trial court awarded a judgment to the defendant, and the plaintiff appealed.

Submitted on briefs under the proviso of Supreme Court Rule 18: 56 Or. 622 (117 Pac. xi).

REVERSED.   JUDGMENT RENDERED.

For appellant there was a brief over the name of *Mr. John C. Shillock.*

For respondent there was a brief by *Mr. Chester A. Sheppard.*

MR. JUSTICE HARRIS delivered the opinion of the court.

The plaintiff takes the position that the execution and delivery of the note was a loss to him, and that the acceptance of the note and formal satisfaction of the judgment amounted to a payment within the meaning of paragraph L of the policy.   The defendant contends that the delivery and acceptance of a note is not such a loss and payment as will satisfy the requirements of the contract; and, furthermore, the insurance company insists that, even though it is decided that a judgment can be paid with a note, nevertheless the plaintiff cannot prevail because: (1) The transaction was characterized by bad faith; and (2) the parties did not expressly agree that the note should be accepted in payment of the judgment.

Some notice must be taken of the evidence before we can determine whether the parties acted in good or bad faith or whether the transaction amounted to a payment of the judgment.   Hill was hopelessly insolvent and, moreover, he was a nominal rather than a real member of the partnership.   Riner may also be regarded as an insolvent, although he had not been

fully paid for all the work done by him, and he probably owned some tools and equipment. Riner could not pay the judgment and Markkane could not enforce its payment. Riner was a contractor and the existence of the judgment hampered him in his efforts to obtain new contracts. It was apparent that it would be to the advantage of both parties if Riner could obtain more contracts for work, because he would then have an opportunity to earn money with which to pay Markkane. A note payable on or before one year after date and the satisfaction of the judgment would not only remove the obstacle that hampered Riner, but it would also extend the time for payment so that for a year, at least, Riner could not be compelled to pay his indebtedness to Markkane, and at the same time Markkane would be benefited by reason of improving the chance of Riner to earn money with which to pay the indebtedness to Markkane; and, moreover, the judgment carried interest at the rate of 6 per cent per annum while the note was to bear interest at 7 per cent. As explained by one of the witnesses "the moving cause" was to give Riner more time "in order to get around" to pay the indebtedness. No witness undertook to suggest that the note was given or received in bad faith; but, on the contrary, every witness, who spoke upon the subject, testified that all parties acted in good faith and that there was no suggestion or understanding that the transaction should be considered any different from what it appeared to be. Riner considered and understood that he paid the judgment with the note. Albert Streiff, one of the attorneys for Markkane, testified that he told Markkane "that at the present time we could not realize anything on the execution" and

"that Riner would pay this here judgment by a note. He didn't like to have that judgment hanging over him, as he could not get credit, and that considering all the circumstances in the case I advised him to take the note, because I told him that he would get seven per cent interest on it and he could sue on it at any time, and the judgment would not be standing against Mr. Riner and it would give him another start, and he would be able to realize on the note more readily than if he had the judgment hanging over him. And with this understanding, why Mr. Markkane agreed that he would accept a note."

1–3. Undoubtedly the attorneys knew that the insurance company would not be liable on the policy until Riner paid the judgment, and they probably considered that the acceptance of the note and satisfaction of the judgment would enable Riner to compel the insurance company to pay the amount of the policy; but this does not amount to bad faith. If the satisfaction of the judgment was real and not a mere pretense, and if there was a real delivery and acceptance of the note, and if the parties either expressly agreed or understood that the note was in truth a payment of the judgment, then the parties acted in good faith; and the additional circumstance that the parties or their attorneys thought or knew that they could then compel the insurance company to pay the policy does not taint the transaction with bad faith. The evidence supports the conclusion that the judgment was in truth satisfied; that the note was in truth given and accepted in payment of the indebtedness; that the parties clearly intended and understood that the note extinguished the judgment; and that they acted in good faith without any agreement or understanding that any step in the transaction should be considered any different from its outward appearance. The defendant is in no position to claim that the failure of Markkane to appear

as a witness for plaintiff argues bad faith.   One of
the attorneys for Markkane testified that he did not
know the whereabouts of Markkane.   It is a significant
circumstance, too, that the record shows that one of
the attorneys for the defendant stated that he knew
where Markkane was; and at the conclusion of the tak-
ing of the depositions a continuance of the hearing
was granted after counsel for defendant stated that
they "would like to have it continued until day after
tomorrow, and Mr. Markkane will be here."   Mark-
kane did not appear nor was his absence explained.

4, 5. Having decided that the parties acted in good
faith, the next inquiry is whether there was such an
agreement between the parties as the law requires con-
cerning the delivery of a note in payment of a debt.
The delivery of the note by Riner and the acceptance of
it by Markkane did not extinguish the judgment, unless
Riner and Markkane agreed that the note should oper-
ate as payment of the judgment.   The general rule
adopted in most jurisdictions, and followed by this
court, is that the delivery and acceptance of a note
does not extinguish the original indebtedness, unless
the parties agreed to give and accept the note as abso-
lute payment: *Black* v. *Sippy,* 15 Or. 574, 576 (16 Pac.
418); *Kern* v. *A. P. Hotaling Co.,* 27 Or. 205, 215 (40
Pac. 168, 50 Am. St. Rep. 710); *Johnston* v. *Barrills,*
27 Or. 251, 256 (41 Pac. 656, 50 Am. St. Rep. 717);
*Schreyer* v. *Turner Flouring Co.,* 29 Or. 1, 4 (43 Pac.
719); *Savage* v. *Savage,* 36 Or. 268, 272 (59 Pac. 461);
*Kiernan* v. *Kratz,* 42 Or. 474, 485 (69 Pac. 1027, 70
Pac. 506); *Stringham* v. *Mutual Ins. Co.,* 44 Or. 447,
459 (75 Pac. 822); *Matlock* v. *Scheuerman,* 51 Or. 49,
58 (93 Pac. 823, 17 L. R. A. (N. S.) 747); *Cranston* v.
*West Coast Life Ins. Co.,* 63 Or. 427, 438 (128 Pac.
427); *Jonas* v. *Hughes,* 64 Or. 24, 26 (128 Pac. 998);

*Seaman* v. *Muir,* 72 Or. 583, 589 (144 Pac. 121) ; *Clarke-Woodward Drug Co.* v. *Hot Lake Sanitorium Co.,* 75 Or. 234, 238 (146 Pac. 135) ; *Johnson* v. *Paulson,* 83 Or. 238 (163 Pac. 430, 437) ; 30 Cyc. 1194.

While the books, including at least two of our own precedents, frequently speak of the rule as requiring the parties to ''expressly'' agree, nevertheless as stated in 30 Cyc. 1201, whenever the question has been specifically considered the decision has been that the parties ''agreed,'' if it is shown that they agreed in terms or that they understood that the acceptance of a note extinguished an antecedent debt.   The agreement need not be expressed in terms; but it is sufficient if it appears from all the facts and circumstances that the parties intended and understood that the note should be received in absolute payment of the antecedent debt: *A. Leschen & Sons Rope Co.* v. *Mayflower G. M. & R. Co.,* 97 C. C. A. 465 (173 Fed. 855, 35 L. R. A. (N. S.) 1) ; *Wilhelm* v. *Schmidt,* 84 Ill. 183; *Dille* v. *White,* 132 Iowa, 327 (109 N. W. 909) ; *Haines* v. *Pearce,* 41 Md. 221; *Hotchin* v. *Secor,* 8 Mich. 494; *Riverside Iron Works* v. *Hall,* 64 Mich. 165 (31 N. W. 152) ; *Randlet* v. *Herren,* 20 N. H. 102; *First Nat. Bk. of Athens* v. *Green,* 40 Ohio St. 431; *Macomber* v. *Macomber* (R. I.), 31 Atl. 753; *Ralston* v. *Aultman-Miller & Co.* (Tex. Civ. App.), 26 S. W. 746; *Sayer* v. *Wagstaff,* 14 L. J. Ch. 116; 9 Ency. of Ev. 755.   The evidence shows that Riner clearly understoood that the note extinguished the judgment; and the testimony of Streiff makes it plain that Markkane accepted the note as absolute payment.   An additional circumstance which speaks strongly for the contention of the plaintiff is the fact that the judgment was satisfied of record; and, when this circumstance is added to all the other evidence, the plaintiff has shown by clear and

satisfactory evidence that, within the meaning of the general rule, the parties agreed that the note extinguished the judgment.

The remaining question for solution is whether the payment of the judgment by the note of Riner is a loss actually sustained and a payment of the judgment within the meaning of paragraph L of the policy. As a preliminary to the discussion we may note in passing that the plaintiff cites *Sanders* v. *Frankfort Marine, Accident & Plate Glass Ins. Co.,* 72 N. H. 485 (57 Atl. 655, 101 Am. St. Rep. 688), and, on the authority of that case, it is suggested that by defending the action prosecuted by Markkane, the insurance company converted the policy into a contract against liability as distinguished from a contract to insure against loss. The doctrine announced in *Sanders* v. *Frankfort etc. Co.* was repudiated by this court in *Scheuerman* v. *Mathison,* 74 Or. 40, 57 (144 Pac. 1177). Under the provisions of paragraph L the insurance company is not liable to the assured in any sum unless the latter first pays all or some portion of a final judgment.

6. The contract does not require that the judgment shall be paid in cash, although a loss or expense must actually be sustained and paid in satisfaction of a final judgment; and, hence, as said in *Travelers' Ins. Co.* v. *Moses,* 63 N. J. Eq. 260 (49 Atl. 720, 92 Am. St. Rep. 663), "payment in property is sufficient compliance with its terms." The defendant contends, however, that the judgment must be paid in cash before it can be said that a loss or expense has actually been sustained. The argument made by the insurance company is completely answered in *Kennedy* v. *Fidelity & Casualty Co.,* 100 Minn. 1 (110 N. W. 97, 117 Am. St. Rep. 658, 10 Ann. Cas. 673, 9 L. R. A. (N. S.) 478), where the court says:

"But the whole argument of appellant rests upon the claim that the mere giving of notes did not amount to a loss actually sustained, for the reason that the maker of the notes and the guarantor might never be called upon to make payment, might become insolvent, that there is no certainty they will ever be paid, and, if not paid, there is no loss actually sustained. This means that the party assured, no matter what his financial condition might be, would be compelled to raise the actual cash within sixty days and pay it to the judgment creditor, or be foreclosed from enforcing the indemnity against the company. If the position is sound, the money could not be raised by borrowing at a bank, or at any other place, upon promissory notes secured either by a signer or by property, because, before the notes became due, the property might become worthless, deteriorate in value, or the parties might become insolvent, and no actual payment ever be made; hence no loss. Fairly construed, the language means simply that the judgment must be paid and satisfied within sixty days from date of its entry, and, when such judgment is paid or satisfied, the loss is actually sustained. Of what consequence is it to the company whether respondent has on hand immediate cash to pay the judgment, or whether the judgment debtor is compelled to borrow that amount on the most favorable terms, or whether he makes the payment and secures the satisfaction by the execution of promissory notes running direct to the judgment creditor? Logically there is no difference in the method, and in either case it amounts to a payment and satisfaction of the judgment."

The editors of American and English Annotated Cases say in a note to *Kennedy* v. *Fidelity & Casualty Company,* 10 Ann. Cas. 674, that the rule announced in that case is in accord with the weight of authority, while in a note to the same case the editors of Lawyers' Reports Annotated, 9 L. R. A. (N. S.) 478, say that the rule has the sanction of all the authorities.

An extended research discloses that nearly all, if not all, the courts passing upon the question have ruled that the giving of a note amounts to a loss actually sustained by the person indemnified, within the meaning of a policy like the one held by Riner, where the creditor accepts the note as actual payment and satisfaction of the judgment. Not only the weight of precedent but also the weight of reason gives support to the doctrine that the making and delivery of a note may be a loss actually sustained: *Seattle & S. F. R. & Nav. Co.* v. *Maryland Cas. Co.,* 50 Wash. 44 (96 Pac. 509, 18 L. R. A. (N. S.) 121); *Taxicab Motor Co.* v. *Pacific Coast Casualty Co.,* 73 Wash. 631 (132 Pac. 393). See also *Maryland Casualty Co.* v. *Orchard Land & Timber Co.,* 240 Fed. 364; *Wilson* v. *Smith,* 23 Iowa, 252; *Gardner* v. *Cooper,* 9 Kan. App. 587 (58 Pac. 230, 60 Pac. 540); *Stenbom* v. *Brown-Corliss Engine Co.,* 137 Wis. 564 (119 N. W. 308, 20 L. R. A. (N. S.) 956); *Herbo Phosa Co.* v. *Philadelphia Casualty Co.,* 34 R. I. 556 (84 Atl. 1097, 42 L. R. A. (N. S.) 1109); *West Riverside Coal Co.* v. *Maryland Casualty Co.,* 155 Iowa, 161 (135 N. W. 414, 48 L. R. A. (N. S.) 195). The judgment appealed from is reversed and the plaintiff is awarded a judgment for $2,627.43 less the offset mentioned in the written stipulation filed by the parties.

REVERSED. JUDGMENT RENDERED.

Allowed July 31, 1917.

On Motion to Recall Mandate. . Motion Allowed.

(166 Pac. 952.)

*Mr. John C. Shillock,* for the motion.

*Mr. Chester A. Sheppard, contra.*

In Banc.    Mr. Justice Harris delivered the opinion of the court.

7. The original opinion concludes with the statement that plaintiff ''is awarded a judgment for $2,627.43, less the offset mentioned in the written stipulation filed by the parties'': *Riner* v. *Southwestern Surety Ins. Co.* (Or.), 165 Pac. 684, 687. When our mandate issued it contained a direction to allow interest on the offset to June 19, 1917, the date when the written opinion was filed. The plaintiff asks to have the mandate recalled so that it may be corrected by allowing interest only until May 16, 1914.

It will be recalled that Markkane obtained a judgment against Riner & Hall for $2,588.06, and on May 16, 1914, Riner paid the judgment by giving his note for $2,627.43.

Riner was indebted to the Southwestern Surety Company in the sum of $1,423.85 and for that reason the parties stipulated, in their agreed statement of facts, thus:

''It is further agreed that if the plaintiff is entitled to recover in this action that said sum of $1423.85, together with interest thereon at the rate of 6 per cent per annum from Feb. 18, 1914, amounting to the sum of $——, is a proper legal offset against the amount due and owing to the plaintiff herein.''

Although dated February 18, 1915, the stipulation was not filed until December 30, 1916.

The judgment appealed from was rendered on December 30, 1916, and in part reads as follows:

"It is considered, ordered and adjudged that plaintiff take nothing from this action, that plaintiff's complaint be dismissed, and that defendant recover of and from plaintiff the sum of $1423.85 with interest thereon from Feb. 18, 1914."

Riner now for the first time contends that interest should not be allowed after May 16, 1914, the date when he paid the Markkane judgment. It will be observed that the stipulation contains a blank space for the insertion of the interest when calculated, thus plainly implying that the parties could not then calculate the interest because they did not at that time know when some event, yet to take place and to the date of which interest would be figured, would occur. Looking at the whole paragraph, it is reasonably plain that the event, yet to occur, was the judgment to be rendered in the Circuit Court and that the parties intended that interest should be allowed up until such time as a judgment might be entered in the Circuit Court. Furthermore, if we again look at the judgment entered in the Circuit Court it will be seen that it contemplates that interest is to be calculated to the date of the judgment. The stipulation was both signed and filed after May 16, 1914, and, if the parties had intended that interest should run only until May 16, 1914, or to February 18, 1915, it is fair to assume that they would have calculated the interest and inserted the amount, because they could have readily done so. While it is true that Riner appealed from the whole judgment, it is also true that it was not until

he filed this motion that he asserted that interest could not be allowed after May 16, 1914, and, by failing to complain about the allowance of interest by the Circuit Court, he has himself construed the stipulation to mean that interest shall be allowed at least until the date of the judgment in the Circuit Court. It may be that the parties considered that if Riner recovered a judgment from the company the judgment would include interest on his claim from May 16, 1914, the date when he paid the Markkane judgment, and that, therefore, whenever Riner obtained his judgment it would represent the difference between $2,627.42 plus interest from May 16, 1914, and $1,423.85 plus interest from February 18, 1914. Riner, however, was not entitled to interest: *Sargent* v. *American Bank & Trust Co.,* 80 Or. 16, 42 (154 Pac. 759, 156 Pac. 431).

The language of the stipulation, the surrounding circumstances and the construction which Riner has himself placed upon the stipulation by failing sooner to object to the allowance of interest, all lead to the conclusion that the parties to the stipulation contemplated that interest should be allowed until some date subsequent to May 16, 1914. The parties undertook to contract with reference to the payment of interest and their intent, when properly ascertained, will control: 22 Cyc. 1490. We are of the opinion that the stipulation contemplates that interest is to be calculated on the offset for the period ending December 30, 1916, the date when the judgment was rendered in the Circuit Court.    MOTION ALLOWED.