Argued October 1, reversed October 20, 1914.

# SEAMAN *v.* MUIR.

## (144 Pac. 121.)

### Banks and Banking—Deposits—Evidence—Weight and Sufficiency.

1.  In an action against a bank to recover the amount of plaintiff's claim against a traction company out of proceeds of sale of the property of the company alleged to have been deposited in the bank for the benefit of the company's creditors, evidence *held* not to show that the bank knew anything of the proposed liquidation of the traction company till after the sale, or that any agreement was made or attempted to be made to bind the bank to pay the creditors of the traction company on the bank's acceptance of notes of the purchasers and the issuance of a cashier's check for the amount which was left in the custody of the bank.

### Bills and Notes—Indorsement—"Negotiated."

2.  Where, after sale of a traction company's property, the purchasers deposited notes for the price with a bank and a cashier's check was issued payable to the secretary of the traction company by whom it was indorsed to a trustee, who indorsed it in blank and left it in the custody of the bank with the notes, the cashier's check was not negotiated within Section 5863, L. O. L., providing that an instrument is negotiated when it is transferred from one person to another in such manner as to constitute the transferee the holder thereof, and, if payable to order, it is negotiated by the indorsement of the holder, completed by delivery.

> [As to what is a negotiable note, see note in Ann. Cas. 1912D, 4.]

### Payment—What Constitutes—Negotiable Papers.

3.  The execution and delivery of negotiable papers is not payment unless it is accepted by the parties in that sense.

> [As to when acceptance of checks constitutes payment, see note in 69 Am. St. Rep. 346.]

### Banks and Banking—Deposits—Nature of Rights.

4.  Where a traction company has sold its property and deposited the proceeds in a bank, the bank becomes a debtor to the company, and the creditors of the company have no title to or interest in the debt of the bank to the traction company, except by virtue of attachment or execution.

> [As to special as distinguished from general deposits, see note in Ann. Cas. 1913E, 45.]

From Multnomah: HENRY E. McGINN, Judge.

Department 1.    Statement by MR. JUSTICE BURNETT.

This is an action by Milton W. Seaman against Jane Whalley Muir, executrix of the estate of William T. Muir, deceased, and the Merchants' National Bank.

The complaint states substantially that the Oregon Traction Company, a corporation, was indebted on March 15, 1906, to sundry persons in amounts aggregating $2,680.53. These further allegations appear in that pleading:

"That on the 15th day of March, 1906, the said Oregon Traction Company being so indebted as hereinbefore set out, the defendants and each of them, on the said 15th day of March, 1906, agreed by and with the said creditors of the said Oregon Traction Company hereinafter set out, that they, the said defendants, would, on the receipt of the amounts of money hereinbefore mentioned in this complaint, from the said Oregon Traction Company, receive and safely keep the same as the money of the said creditors of the said Oregon Traction Company as hereinbefore named, and set out, and would pay the same over to the said creditors as hereinbefore in this complaint set out, whenever they, the defendants, should be afterward requested; that on the said 15th day of March, 1906, the said Oregon Traction Company, through its officers and agents, did pay over to the defendants and each of them, the full sum of $2,680.53, which payment was made for and to the use and benefit of the said creditors of the said Oregon Traction Company as hereinbefore set out, and in accordance with the agreement made by the said defendants to hold and safely keep the said money to and for the use of the said creditors as hereinbefore named, and in the amounts as hereinbefore set out."

Alleging an assignment to himself of the demands against the traction company before mentioned, and his demand of the defendants for the payment of their

aggregate, the plaintiff asks for judgment in that amount.

The answer alleged, in substance, that neither of the defendants at any time had any money or property in their possession or under their control belonging to the Oregon Traction Company or to any of the assignees of the plaintiff, and that the United Railways Company acquired all the property of the Oregon Traction Company and agreed to pay its debts including the amounts mentioned in the complaint.   Otherwise the defendants deny everything in the complaint except the corporate character of the defendant Merchants' National Bank. During the trial the plaintiff filed an amended reply denying the new matter of the answer except the corporate character of the United Railways Company, and set out affirmative matter designated as a plea in estoppel to the effect that the defendants ought not to be permitted to say they have no property belonging to the traction company, because the plaintiff alleges in effect that the defendant Muir was an officer and director of the traction company and held like positions in the United Railways Company, besides being an officer and attorney of the Merchants' National Bank; that the defendants knew that the traction company was indebted to the plaintiff's assignors in the sums set out in the complaint, among others its total indebtedness amounting to about $35,000; that the defendants represented to the plaintiff and his assignors in common with others that the traction company would go into liquidation disposing of its assets at auction, and out of the proceeds of such sale would pay the indebtedness of the traction company, including the claims of the plaintiff's assignors; that they were thereby induced to refrain from exercising their legal rights against the

traction company for the satisfaction of their claims; and that the auction was held and the property sold, but the proceeds were not applied to the payment of the claims. During the trial, on motion of the plaintiff, the action was dismissed as to the executrix of the defendant Muir; he having died during the pendency of the action. The court made findings of fact and conclusions of law in favor of the plaintiff as against the defendant bank and entered judgment thereon, from which the bank appeals. REVERSED and REMANDED.

For appellant there was a brief and an oral argument by *Mr. Richard W. Montague.*

For respondent there was a brief over the names of *Mr. Wilson T. Hume* and *Mr. John F. Logan,* with an oral argument by *Mr. Hume.*

MR. JUSTICE BURNETT delivered the opinion of the court.

The question presented is whether there is any evidence to support the findings, they being equivalent to the verdict of a jury. A brief *résumé* of the testimony, therefore, is necessary for the purpose of this decision. It is unquestioned that the traction company was indebted to the plaintiff's assignors in the amounts mentioned in the complaint. It was hopelessly involved financially and determined to sell its property and satisfy its debts. Negotiations had been pending with certain individuals, members of the United Railways Company, to purchase the property with a view of liquidating the liabilities of the traction company, and with that end in mind the individuals mentioned had bought and taken an assignment of about $25,000 worth of the claims against that concern. At this juncture

it held a public auction of all its property, the terms of the sale being for cash. The property was struck off to one Lemcke for $36,000, when for the first time the purchaser and those associated with him stated to the defendant Muir, who was the legal adviser of the traction company in the matter, that the money was not at that time available but was coming from Los Angeles in a few days. After some talk on the subject, the purchasers and the secretary of the traction company accompanied Mr. Muir to the Merchants' National Bank, where the United Railways Company, by its president, executed to the bank a demand note for $25,000, which was indorsed by three of the individuals concerned in the purchase, and Lemcke gave his individual note to the bank for $11,000, payable on demand, which note was also indorsed by three individuals concerned in the purchase. The bank then and there by its vice-president executed a cashier's check for $36,000, payable to the order of W. L. Gould, secretary of the Oregon Traction Company. Gould in his official capacity then and there indorsed it to the order of William T. Muir, trustee, who likewise indorsed the same in blank. The notes and this check were pinned together and left in the custody of the bank. The testimony of Mr. Muir on that subject is uncontradicted by anyone and constitutes a clear statement of the matter. After narrating the fact that the purchasers said they would have the money from Los Angeles in two or three days and that it was all arranged for coming, the witness continued as follows:

"So I said this: 'I will do this, I ought not to, but I will—I will go down and see Mr. Hoyt of the Merchants' National Bank, and see if I can arrange with him so that this thing can be tided over two or three

days,' and I did go down. I said to Mr. Hoyt: 'Now, Ralph, couldn't we arrange it this way: Couldn't you have a certified check for $36,000, on this bank made in the name of W. L. Gould, secretary of the Oregon Traction Company, and have him immediately indorse that check to me, payable as trustee, and then I will hold that as trustee for this bank, see that it will not be disposed of until these men have brought that money here from Southern California, which they have assured me will be but a very few days.' Mr. Hoyt said: 'Can I do that? Is it regular? Is it against the national banking laws?' I was attorney for the bank, and I told him it was not. I knew of nothing against it, because the bank was not in any peril, in no danger of losing anything, because that check would remain indorsed to me as trustee, and he knew it could not be misused. And as a further precaution, I had him retain that check.''

1. There is no testimony that the bank had any dealings with the plaintiff's assignors, or that it or any of its officers knew of the existence of their claims or of any relation they had to the traction company. Neither is there any evidence that the bank knew anything about the proposed liquidation of the traction company until the proposal was made to it as stated in the quoted testimony of Muir. The only evidence connecting Mr. Muir with the bank is his own statement that he was the attorney for that institution. It nowhere appears that he had any authority whatever to bind the bank by an agreement with the plaintiff's assignors like that alleged in the complaint, and there is no testimony whatever that he even attempted to thus involve the bank. Whatever else may be ascribed to the filing of the notes with the bank and the writing of this cashier's check, it is clearly apparent that neither the bank nor any of the other parties to the

transaction intended that it should be bound to the plaintiff's assignors for anything. Neither did it receive the money represented by the notes. Conceding that the cashier's check had been negotiated and put into circulation, the amount represented thereby was not subject to segregation as in checking accounts. Under such circumstances, if the bank had received the money which it purported to represent, it was the duty of that institution to keep that amount intact until the surrender of the cashier's check. It could not lawfully pay it out otherwise.

2. But the cashier's check was not negotiated. It never left the possession of the bank. Section 5863, L. O. L., lays down the rule thus:

"An instrument is negotiated when it is transferred from one person to another in such manner as to constitute the transferee the holder thereof. If payable to bearer, it is negotiated by delivery; if payable to order, it is negotiated by the indorsement of the holder, completed by delivery."

Here, the delivery made necessary by the statute to complete the negotiation of the instrument in question never occurred. The bank received nothing but promises, and did not negotiate its own promise in consideration of the notes delivered. The whole scheme was an abortive attempt to perpetuate the transaction of the sale until the money should arrive to complete the same.

3. Moreover, the execution and delivery of negotiable paper is not payment unless the same is accepted by the parties in that sense: *Black* v. *Sippy,* 15 Or. 574 (16 Pac. 418) ; *Johnston* v. *Barrills,* 27 Or. 251 (41 Pac. 656, 50 Am. St. Rep. 717) ; *Schreyer* v. *Turner Flouring Co.,* 29 Or. 1 (43 Pac. 719) ; *Kiernan* v. *Kratz,* 42 Or.

474 (69 Pac. 1027, 70 Pac. 506); *Stringham* v. *Mutual Ins. Co.,* 44 Or. 447 (75 Pac. 822). That the notes and cashier's check were not intended as payment of any sums of money to the bank is conclusively shown by the undisputed fact that the bank retained the possession of the check and did not negotiate it.

4. Still further, the utmost that could be claimed for the transaction in any event would be that the traction company had sold its property and had deposited the proceeds of the sale with the defendant bank which thereby became the debtor of the traction company. Under such circumstances, the creditors of the traction company would have no title to nor interest in the debt owing from the bank to the traction company, except by virtue of attachment or execution, however equitable it might be that the funds of the traction company should be applied to the payment of its debts. The rule is thus stated by Mr. Justice EAKIN, in *Williams* v. *Commercial National Bank,* 49 Or. 492 (90 Pac. 1012, 91 Pac. 443, 11 L. R. A. (N. S.) 857):

"Where a corporation transfers all its assets to a new corporation without paying or making provision for the payment of its debts, as we have already seen, the new company is, by virtue of the transaction, charged with notice, and, if creditors are delayed or defrauded thereby, it is a constructive fraud against them, and the creditor, after exhausting his remedy at law, may bring a creditors' suit to reach such assets. In such case the creditor has no standing to bring a creditors' suit until he has either a lien by judgment or attachment or has exhausted his legal remedy."

This is not an action for money had and received in the strict sense of the word. The plaintiff alleges an agreement on the part of the defendants to disburse to his assignors sums of money which the Oregon Trac-

tion Company would thereafter place in the possession of the defendant bank for that purpose. The testimony is entirely wanting to prove any such agreement. It has never been held that a creditor could directly bring an action against one who owed his debtor, yet that is what is attempted in the present action. Considered on the law side of the case, the remedy of the plaintiff was by action against the traction company supplemented by garnishment proceedings against the defendant bank. In any view of the case the evidence does not sustain the allegations of the complaint. The judgment is therefore reversed and the cause remanded for further proceedings. REVERSED AND REMANDED.

MR. CHIEF JUSTICE McBRIDE, MR. JUSTICE MOORE and MR. JUSTICE RAMSEY concur.