# JOHN HANCOCK MUT. LIFE INS. CO. v. MANN.

## No. 5824.

Circuit Court of Appeals, Seventh Circuit.
Dec. 16, 1936.

Rehearing Denied Jan. 7, 1937.

Nathaniel Rubinkam and William S. Allen, both of Chicago, Ill., for appellant.

Alvin E. Stein, of Chicago, Ill., for appellee.

Before EVANS and SPARKS, Circuit Judges, and LINDLEY, District Judge.

EVANS, Circuit Judge.

Appellant assails a judgment for $53,-387.10 recovered by appellee, the beneficiary named in a life insurance policy issued by appellant, on the ground that the policy had lapsed for non-payment of premium. The controversy turns upon whether payment was made when insured gave to the insurer's general agents a post dated check which was subsequently dishonored because of insufficient funds. Shortly afterwards the insured committed suicide.

The material facts are:

A check[1] for $612.50 (the amount of

---

[1] "2-164 Lake View State Bank 2-164
"3179 North Clark Street, Corner Belmont Avenue
"Chicago, Ill.. Sept-5th 192 1930 No. 2125
"Pay to the order of Joseph H. & Sherman M. Strong Gen Agents $612.50 Six Hundred Twelve & 50/100 Dollars A/C Prem-#1805982
                        Fred Mann.
"(Endorsed) (Stamp) Pay The First National Bank, Chicago, Ill., or order

Joseph H. Strong & Sherman M. Strong, General Agents, Joseph H. Strong, General Agent, Joseph H. Strong, General Agency, Joseph H.. Strong. John Hancock Mutual Life Insurance Co., Boston, Mass. (Stamp) Through Chicago Clearing House. 1d Sep 1 30 M To the First National Bank Pay to the order of Any Bank or Banker 2-1 Prior endorsements guaranteed First National Bank of Chi-

the quarterly premium which was due July 16th) was given by insured to, and made payable to, insurer's general agents, Joseph and Sherman Strong, on August 14; 1930, post dated September 5, 1930.

The insured's bank balance on the morning of September 5 was $231.29 and at the end of the day was $155.65, and thereafter the balance decreased, and on the 18th was depleted, by payment of small checks, to $64.40. On September 1, insured had a balance of $573.33.

The official receipt for the payment of this premium was not produced by either side, although the home office had issued it and sent it to the general agents as a matter of routine (usually thirty days before the due date of premium) probably before August 14th.

The general agents notified the home office of the payment (the manner of payment not being specified), an entry was made on the books of the company showing payment, and the agent was given credit therefor. A supervisor of the home office testified that it received notice on September 22 that the premium had been paid.

Upon receipt of the dishonored check from the bank, the general agent sent it to the home office, which wrote the insured a letter [2] on September 29 returning the dishonored check and stating the policy had lapsed and giving the conditions upon which reinstatement might be made.

The photostatic copy of the check would indicate the general agents deposited the check on September 1 (four days before the date of check) in the First National Bank of Chicago. The check was drawn on the Lake View Bank. There also appears on the check in handwriting what seems to be the words "left notice, 9-18-30." Strong, the general agent, testified that he held the check and did not present it to the bank until about September 15th.

It also appeared that the insured had borrowed $6,363.65 on the policy on January 16, 1930. The paid up value of the policy with interest to the time of trial was $516.07, which was tendered appellee. The preceding quarterly payment, due April 16, 1930, was paid and accepted June 14, 1930 (much after the expiration of the grace period). The policy (reduced to $50,000) had been taken out in January, 1925. Appellee, the beneficiary, is the widow of the insured decedent. The jury's verdict was for $53,099.61, and judgment thereon for $53,387.10 was duly entered. The pertinent policy provisions are set forth below.[3]

The insurance company later sent out an undated notice of premium due October

---

cago Illinois. 2-1 left Notice 9-18-30 801."

[2]

"September 29, 1930
"Subject: #1805982—
"Mr. Fred Mann,
"4810 North Corn St., (4810 North Clark St.,)
"Chicago, Illinois.
"Dear Sir:
"We regret to be obliged to notify you that your check in the amount of $612.50 drawn to the order of our General Agents, Joseph H. and Sherman M. Strong of Chicago, Illinois on the Lake View State Bank of Chicago, Illinois, and tendered to us in settlement of the quarterly premium which was due July 16, 1930 under your policy numbered 1805982 has been returned by the Bank on account of insufficient funds. The check is enclosed.

"It is unfortunate that this check has no value because it becomes necessary to advise you that no consideration has been received by the Company for this premium. The policy has lapsed under its terms and the receipt which we issued for this premium is void. Will you please return it to us.

"We are disposed to believe that you have no thought of discontinuing this insurance and shall be pleased to take up with you the matter of reinstatement, which may be made upon payment of the premium in arrears with interest, provided you can furnish satisfactory evidence of insurability. The Company's requirements as regards evidence of insurability would include a medical examination at this time and we would suggest that you get in touch with our General Agents, Joseph H. & Sherman M. Strong of Chicago, Illinois to arrange for medical examination.

"We trust that you will give this matter your immediate attention.
"Yours truly,
"Charles J. Diman, Secretary
"By G. K. Prentiss."

[3] "* * * no other person is authorized to modify or waive any of the terms and conditions of this policy, nor to extend the time for payment of premiums or other moneys due to the Company, or to bind the Company by making any promise or by accepting any representation or information not contained in the application for this policy.

16. The insurer said it was its custom to send out such notices thirty days before due date. The court excluded evidence of this subsequent premium notice.

S. Strong had been agent for the insurance company since 1915 and general agent since 1929. He said he gave no receipt to insured upon receiving the check; that the official receipt was returned to the home office; and that he held the check until about the fifteenth of September.

Agents have weekly accountings with the home office.

The court refused appellant's motion for directed verdict and submitted the case to the jury, which found for the beneficiary, appellee.

Ignoring the minor questions which are raised by this appeal, we come directly to the effect of the delivery by the insured, and acceptance by the insurer's agents, of a post dated check where it appears that the thirty days of grace which were given to the insured had not expired when the check was delivered, but did expire before the date of said check.

Counsel agree that had insurer accepted insured's note, the dates being the same, such acceptance of the note would have been payment of the premium. Cyclopedia of Insurance Law, Couch, § 604; Ruling Case Law, "Insurance," § 139; Devine v. Federal Life Ins. Co., 250 Ill. 203, 207, 95 N.E. 174; Franklin Fire Ins. Co. v. Colt, 20 Wall. 560, 22 L.Ed. 423; Thompson v. Insurance Co., 104 U.S. 252, 26 L.Ed. 765.

We may therefore narrow our inquiry to the differences and similarities between the insurer's acceptance of a post dated check instead of a note and the authority of general agents of an insurance company to extend credit to an insured.

In approaching this question, it is necessary to keep in mind that the payment of a premium on a life insurance policy is optional with the insured, who always has the privilege of terminating his insurance by not paying the premium. The consideration of a note by him given for the amount of the premium is the payment of said premium and the continuance of the life insurance policy. Inasmuch as the execution of a note creates a liability on the part of the insured which did not previously exist, it constitutes the consideration for the payment and satisfaction of the premium. Wherein does the execution and acceptance of a post dated check permit of a different conclusion?

Prior to the issuance of the post dated check there was no liability on the part of the insured to pay the premium. Upon the delivery of the check there arose a legal liability on his part. If the check were a presently due check the consideration would arise, but acceptance of such a check would be upon the hypothesis of money in the bank with which to pay the check. If there were no funds in the bank, it would be optional with the insurer to retain the check and enforce the liability or repudiate the effect of its acceptance because of fraud. For payment of a premium will not be recognized where the insurer was induced to accept something of value upon a showing that the insured practiced fraud and deceit on the party crediting payment of premium.

In the execution of a post dated check, however, and its acceptance, there is no fraud or deceit. There is the necessary implication of extension of credit on the part of the payee to the maker of the check. There is also the inference that the maker has no funds in the bank with which to presently meet the sum named in the check, but that he will have the necessary money in the bank on the date of the post dated check.

Had the insured met his death prior to the date of the check, but subsequent to the thirty days of grace within which he might have paid his premium, we think there would

---

"Payment of Premiums

"All premiums hereunder are payable in advance, annually, or in regular equivalent semi-annual or quarterly installments at the Company's published rates, at the Home Office of the Company, or to a duly authorized agent presenting the official receipt signed by the President or Secretary, and countersigned by the agent designated on such receipt. Except as herein expressly provided, the payment of any premium or installment thereof shall not maintain this policy in force beyond the date when the succeeding premium or installment becomes payable.

"Grace Period. A grace of thirty-one days without interest, during which the policy shall remain in force, will be granted for the payment of premiums or regular installments thereof, after the first. If the death of the Insured occur during the days of grace, the sum necessary to complete payment of premium for the then current policy year will be deducted from the amount payable hereunder."

have been no doubt of insurer's liability. For, until death intervened, insured might have deposited money in the bank. If the delivery of the check constituted payment under such circumstances, then we are at a loss to understand how such payment may be avoided by subsequent acts of insured. The delivery of the check was either payment or it had no legal efficacy whatsoever.

Payment having been made, its subsequent avoidance is not possible save as payee shows fraud by payer in inducing payee to acknowledge payment.

There is here also present an estoppel phase of this payment issue. The insured held a valid life insurance policy for $50,000 upon which he had paid six substantial premiums. He was evidently desirous of paying the next premium instalment when he entered the insurer's office. The time within which he might pay the premium and keep the policy alive was about to expire. He had two more days within which to make payment. Although he had not at the time the necessary funds in the bank, it does not appear that he could not have obtained the money within the two days. In fact, it not only does not affirmatively appear that he could not make the payment, but it affirmatively appears that with the cash on hand at the time, added to the amount he might have borrowed on the policy, he could have made the payment. Instead he offered his post dated check which the insurer accepted. The *date therein fixed extended beyond* the *payment date* of the *premium* and the *thirty days grace.*

It would be carrying the facts too far to suggest that the insured might have terminated his life within the period fixed in the policy had the credit represented by the post dated check not been extended. Yet such is a possibility. The weakness of this death possibility as an estoppel factor lies in the fact that the date when the impulse or determination to end life was finally reached by the insured is unknown. It is inferable at least that his determination to end life was not until after the thirty days of grace had expired. For, if it were present before, the insured would have avoided all possibility of contest arising over the giving of a post dated check without funds in the bank, by acting when the policy was still clearly in force. We are therefore convinced that there is no estoppel based upon the act of suicide. We do conclude, however, that acceptance of the check which did not become due until after the time for payment of the premium had expired should and does preclude the later repudiation of the extension of credit.

This leaves only the question of the authority of the general agent to bind the insurer. Questions involving agents' authority may or may not be questions for the jury, depending upon the facts in each case. In the instant case, fact issues were submitted to the jury, and it found for appellee. If the instructions were meager they could and would have been elaborated had appellant requested. Its motion for a directed verdict did not meet criticisms directed to inadequate instruction to the jury. We think the agents were authorized to extend credit to the insured on behalf of the insurer. Most surely they could personally extend credit to him. Cyclopedia of Insurance Law, Couch, § 604.[4] The facts before us would indicate that credit was extended by the insurer's agents personally, and the court was justified in so holding as a matter of law. The check was made payable to Joseph and Sherman Strong, General Agents. The name of the insurer did not appear. Joseph and Sherman Strong accepted the check and notified the head office of the company that the premium was paid. No mention was made to the home office that payment was by a post dated check. The agents gave credit to the insured on their books. They induced the company to do likewise. They did not present the post dated check on its date, but kept it ten days. These facts irresistably point to credit extension by the agents to the insured. At the least value they called for submission to a jury and the District Judge so acted.

There existed no valid reason why the agents should not have loaned the money to insured. By so doing they, of course, obligated themselves to the insurer. This, we

---

[4] Cases holding personal extension of credit by agent to insured effectuates acceptance by insurer are: Ruling Case Law, "Insurance," § 139; Devine v. Fed. Life Ins. Co., 250 Ill. 203, 95 N.E. 174; Reliance Life Ins. Co. v. Thayer, 84 Okl. 238, 203 P. 190; Alliance Ins. Co. v. City Realty Co. (D.C.) 52 F.(2d) 271; Courd-way v. People's Mut. Life Ins. Co., 118 Cal.App. 530, 5 P.(2d) 453; Lehman v. Gunn, 124 Ala. 213, 27 So. 475, 51 L.R.A. 112, 82 Am.St.Rep. 159; Couch, Cyclopedia of Ins. Law, § 537; Lord v. Bankers' L. Ins. Co., 18 App.Div. 246, 45 N.Y.S. 935; Franklin Fire Ins. Co. v. Colt, 20 Wall. 560, 22 L.Ed. 423.

think, was the effect of the transaction. Having extended the credit to the insured, the premium was paid and the agents became (as was recorded on the books of the company) liable to the insurer for the amount of the premium. The effect of the entire transaction being a payment of the premium, it could not be nullified by the death of the insured nor by the discovery of the fact that the credit was unwisely extended.[5]

Other questions presented by the appeal do not, in our opinion, require separate discussion.

The judgment is

Affirmed.

---

[5] For cases dealing with the effect of delivery by insured and acceptance by the insurer of post dated checks in payment of insurance premiums, see Philadelphia Life Ins. Co. v. Hayworth, 296 F. 339 (C.C.A. 4); Liberty Life Ins. Co. v. Moore (Tex.Civ.App.) 10 S.W.(2d) 178; New Amsterdam Casualty Co. v. Beren, 142 Misc. 297, 253 N.Y.S. 515; Courdway v. People's Mut. Life Ins. Co. of Cal., 118 Cal.App. 530, 5 P.(2d) 453; Republic Life & Accident Ins. Co. v. Hatcher, 244 Ky. 574, 51 S.W.(2d) 922.