**NEW YORK LIFE INS. CO. v. MILLER
et al.**

**No. 10258.**

Circuit Court of Appeals, Ninth Circuit.
April 30, 1943.

Rehearing Denied June 5, 1943.

Huntington, Wilson & Davis, W. M. Huntington, and Roland Davis, all of Portland, Or., for appellant.

George Wm. Neuner, Jr., of Salem, Or. and George Neuner, of McMinnville, Or., for appellees.

Before GARRECHT, HANEY, and HEALY, Circuit Judges.

HEALY, Circuit Judge.

This is a suit for the recovery of death benefits under two policies of insurance written by appellant, one in July 1939 and the other in February 1940. Appellees, the widow and children of the insured, were the beneficiaries. From a judgment in favor of the beneficiaries, entered on the verdict of a jury, the insurer appeals.

Quarter annual premiums on the policies became due October 17, 1940, in the total sum of $48.72, but were not then paid. The grace period of thirty-one days expired November 17 following. On November 13 Yount, a soliciting agent of appellant, called on insured at his ranch near McMinnville, Oregon, for the purpose of delivering a policy on the life of the insured's son. At that time Yount reminded the insured of his own policies, stating that a check for the premiums must be mailed by the 17th. The insured then wrote a check for the two premiums and delivered it to Yount, the check being postdated November 17, 1940, and being made payable to the company. There is evidence that the insured believed he had a sufficient balance in the bank at all times to take care of the obligation. On the afternoon of November 13 Yount delivered the check to Durham, appellant's cashier in charge of its Oregon branch office at Portland. McMinnville is less than forty miles distant from Portland.

November 17 fell on a Sunday. On November 18 the agency cashier endorsed and deposited the check to appellant's

credit in a Portland bank. At the same time he made entries indicating payment on the daily premium and commission report and mailed to the insured the official premium receipts, each of which contained on its face the following: "If remittance otherwise than in cash has been made, this receipt shall be void if payment of such remittance is not actually received by the Company."

The check, drawn on a McMinnville bank, reached that bank on November 20, at which time payment was refused because of insufficient funds. The dishonored check was returned to the Portland bank, reaching the latter on Friday, November 22. On the following Monday, November 25, the check was returned to the Portland agency. It was held there until the following day, November 26, at which time it was mailed to the insured together with a letter stating that because of the check's being dishonored the premiums stood unpaid. The letter requested the insured to return the premium receipts and urged him immediately to apply for reinstatement by filling in the answers to questions on the personal health certificate enclosed. The letter asked that the form be returned together with a remittance of $49.07. On the same day the agency cashier reversed the entries previously made on his records.

The letter with its enclosures reached the McMinnville post office on November 27, but was not delivered at the insured's home until the next day, November 28. Meanwhile, on the late afternoon of November 27 the insured was gored by a bull. He was found in a semi-conscious condition and remained in a state of coma until his death on December 3, 1940. On November 28, immediately upon receipt of the letter returning the dishonored check, the insured's wife secured a post-office money order for the amount of the premiums, with interest, and forwarded the same to appellant's Portland office. The personal health certificate was not forwarded. The money order appears to have been held by the agency for several days. On December 2 the cashier returned it by mail to the wife, who did not receive it until after the insured's death.

At the conclusion of the testimony appellant moved for a directed verdict on the ground that there was no evidence that the premiums had been paid before the expiration of the grace period, and none that appellant had accepted the check as absolute or unconditional payment. The motion was denied and the cause submitted to the jury on what was stated by the court to be the controlling question, namely, whether the check had been given and accepted as payment of the premiums. The jury were advised that ordinarily a check is given and accepted in business transactions conditional on its being paid; and they were instructed to determine whether, under all the facts, there was a contrary intention on the part of both parties in the case before them. They were told that on this point the plaintiffs had the burden of proof.

The question for determination here is whether appellant's motion, or its later motion for judgment notwithstanding the verdict, should have been granted. The applicable rule of law appears to be the same in Oregon as elsewhere, namely, that the giving of a check for an indebtedness is not payment unless the parties so agree. Seaman v. Muir, 72 Or. 583, 144 P. 121. Proof of an express agreement to this effect is not required; the mutual understanding may be implied from the circumstances and the conduct of the parties. Joppa v. Clark Commission Co., 132 Or. 21, 281 P. 834; Central States Life Ins. Co. v. Johnson, 181 Okl. 367, 73 P.2d 1152; Equitable Life Assur. Soc. v. Brandt, 240 Ala. 260, 198 So. 595, 134 A.L.R. 555. Was there any substantial evidence in this case to support the implied finding of the jury that the check was given and received as unconditional payment?

So far as concerned the insured himself the jury were warranted in believing that he intended the check as payment. The premiums did not constitute a debt which he was obliged at all events to discharge; he might pay them or not as he chose. The giving of the check was evidence of his intention to become bound. On the other side, the postdated check, with its implied notice that there was insufficient money presently on deposit, was accepted and retained by appellant's representative without comment. It was not deposited for collection until November 18, at which time notation of payment of premiums was recorded on the office records and official receipts were issued. When the check was returned dishonored it was held in the Portland office for a day before being returned to the maker. No explanation was offered for this delay. The money order, unaccompanied by evi-

dence of insurability, was retained in the branch office for several days before being returned, and it was inferable that news of the accident had reached the insurer in the interim. The conduct of appellant in these respects was in a measure equivocal, and we are not prepared to say that it furnished no rational basis for the jury's verdict.[1]

█ Questions of waiver and estoppel, urged by appellees, were not submitted to the jury. We believe they should have been. The situation as it turned out was one where the time element was all-important, a delay even of hours resulting in the unnecessary and unintended loss of a valuable right. Had the dishonored check been returned to the insured promptly upon its delivery to the Portland agency, it would presumably have reached him the day prior to his injury; and there is no reason to suppose that it would not immediately have been made good and the certificate of insurability furnished. It was not until two weeks after the delivery of the check and ten days after its date that the fatal accident occurred, and even then the insured had not been advised of its nonacceptance.

█ It is urged that the Portland agent had no authority to extend the time for payment of premiums, or to waive any lapse or forfeiture or any of the policy requirements; and attention is called to the provisions of the applications and policies in these respects. However, the Portland agency was an important state agency of the insurer.[2] The official premium receipts had been placed by the insurer in the hands of its agency cashier. The question as to the latter's actual or ostensible authority in the premises was submitted to the jury under proper instructions and was by them resolved against appellant.

Other points have been urged but we see no merit in them.

Affirmed.

HANEY, Circuit Judge (dissenting).

The only vital issue in this case is whether or not the premiums on the policies had been paid. It is asserted, and the majority hold, that the post-dated check could be treated as payment. Such a holding appears to me to have little, if any foundation in reason or in fact.

The question as to whether delivery of a check constitutes payment of a premium is treated in an annotation in 40 A.L.R. 419, 423, where it is said: "The general rule appears to be that the mere receipt of a check will not prevent a forfeiture of the policy for non-payment of premium, but if the check is accepted as payment of the premium, even though it turns out to be worthless, there is payment which will prevent a forfeiture. The crux of the citation appears to be the question of acceptance."

Later cases are collected in 109 A.L.R. 781, 783. While the question has not been determined in Oregon, I think the Oregon courts would apply that rule. See Seaman v. Muir, 72 Or. 583, 589, 144 P. 121.

We should, therefore, look to see what the circumstances were, under which the check was accepted. It was given to a soliciting agent—one who concededly had no authority to collect premiums at all. He gave it to the properly authorized person who could accept premiums. That person held the check until the date thereof, then deposited it in the bank, and at the same time sent receipts to the insured by mail. They contained the following:

"Received, with thanks, the payment specified below * * *

"Premium $28.62 * * *

"If remittance otherwise than in cash has been made, this receipt shall be void if payment of such remittance is not actually received by the company."

The intention of the insurer is thus made quite clear, no matter what the insured's intention was. Had it been the intention of the insurer to consider the premium as paid, and to look to the check as an obligation, there would have been no reason for saying that a receipt for the same premium was to be void in case the check was not paid. After return of the check, the insurer made its action coincide with its original position, by stating that the policies had lapsed, and it would be necessary for the insured to apply for reinstatement of the policies. At the time this letter was written, the insured had not been injured, so that it is clear that the

---

[1] Compare John Hancock Mut. Life Ins. Co. v. Mann, 7 Cir., 86 F.2d 783, 109 A.L.R. 775.

[2] Cf. New York Life Ins. Co. v. Rogers, 9 Cir., 126 F.2d 784.

insurer was not actuated by a motive to exonerate itself of liability.

The majority find some intention on the part of the insurer to accept the check as payment of the premium, from the fact that it did not return the check to the insured on the same day it was returned to the insurer. That fact is purely a negative one so far as showing any intention is concerned. It shows, if anything, only that the press of business was great. However, of more importance is the fact that the policies had already lapsed before the check was returned to the insurer, by the bank, so it is of little importance whether the returned check reached the insured eight days after the premiums were due, or whether it was nine days before the insured got the check.

While the majority mention also that the delay of the insurer in returning the money order, which was procured still later, shows an intention of the insurer to treat the check as payment, I see no basis for treating that fact any differently than the delay mentioned above, because the policies had then lapsed.

I think the judgment should be reversed.